HENRY R. WILKINSON, Respondent, *v.* JAMES GILL, Appellant.

Any game or device of chance in the nature of a lottery is within the prohibition of the statute against lotteries.

The payment of money in what is known as "playing policy" *i. e.,* upon the selection of certain numbers, which, if drawn in a lottery, entitle the person paying to a much larger sum, is the purchase of an interest or share in a lottery within the meaning of the provision of said statute (1 R. S., 667, § 32), which authorizes the purchaser to sue for and recover double the sum so paid.

(Argued May 20, 1878 ; decided May 28, 1878.)

APPEAL from judgment of the General Term . of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and

affirming an order denying a motion for a new trial. (Reported below, 10 Hun, 156.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*Samuel Hand,* for appellant. Where it appears that a party has destroyed a document voluntarily it will be presumed that if it had been produced it would have been against his interest. (*Blade* v. *Nolan*, 12 Wend., 173; *Broadway* v. *Stiles*, 3 Halst., 58; *Riggs* v. *Taylor*, 9 Wheat., 483–488; *Johannes* v. *Bennett*, 5 Al., 173; *Rounn* v. *B'k of Columbia*, 9 Wheat., 581.)

*E. H. Benn,* for respondent. The transaction, out of which the action arose, was a violation of the statute prohibiting lotteries. (1 R. S., 655, § 27; *Hall* v. *Ruggles*, 56 N. Y., 424, 427.)

CHURCH, Ch. J. This is an action to recover money under the following statute against lotteries : "Any person who shall purchase any share, interest, ticket, certificate of any share or interest, or part of a ticket, or any paper or instrument purporting to be a ticket, or share or interest in any ticket, or in any portion of any illegal lottery, may sue for and recover double the sum of money, and double the value of any goods or things in action which he may have paid or delivered in consideration of such purchase, with double costs of suit." (1 R. S., 667, § 32.)

The only evidence in the case was that of the plaintiff himself. He testified that he paid to the defendant, at different times, sums amounting to $3,601.08 for tickets in a Kentucky lottery and in "playing policy," as it is called. He stated that the most of it was paid in playing policy ; that he purchased some tickets, but was only able to specify one ticket upon which he drew a prize of $34. The mode of "playing policy" was described by the plaintiff as follows: "I selected certain numbers, and handed those numbers into

the office then, and if those numbers came out in the drawing, why I made money; if they did not, I lost. I might take four numbers, according to the style of playing — gigs and horses and saddles. * * * I merely handed the numbers in with my money, and after the official drawing was announced, I might go the same night or next morning, and if I found my numbers came out, I claimed my money. I looked at the official list, and then compared the official list with my memorandum. I universally played in the Kentucky lottery, having more confidence in that." A saddle represented two, a gig three, and a horse four numbers.

The court charged the jury that the plaintiff was of course entitled to recover for any ticket or part of a ticket which he purchased in the Kentucky lottery. The court also charged that "playing policy" was the purchase of an interest in a lottery, and that the plaintiff was entitled to recover for what he had paid in that manner also, and it was left to the jury to find the amount. The jury rendered a verdict for $1,422.76.

The exception was to the latter part of the charge in reference to the policy, without specifying what particular part was intended to be excepted to. The General Term held that the exception was too general and was not strictly available. The rule requires precision in making exceptions to avoid mistakes and misapprehensions, and if several propositions are included in one exception, and either of them is correct, the exception is not available. But I think it would be too rigorous a construction to apply it in this case. That portion of the charge contained substantially but one proposition, which has been stated, and the exception is sufficiently specific to point to that proposition. The statute permits a recovery of double the sum paid, and although the recovery was less than half that sum, I do not think the evidence would warrant the recovery obtained for tickets sold without including a portion of the amount paid in "playing policy," and as the charge permitted a recovery

for that, the presumption is that it was included; at all events we cannot say that it was not.

The question is therefore presented, whether the "policy" transactions were within the statute. The statute is very broad and comprehensive. It will be observed that it is not confined to a sale of tickets or parts of tickets, but includes the sale of any *share or interest* in *any* illegal lottery. Section twenty-six of the same statute declares that "every lottery, game, or device of chance in the nature of a lottery, other than such as have been authorized by law, shall be deemed unlawful." This statute evidently intended to treat every game or device of chance, in the nature of a lottery, as a lottery, and the use of that word would include all its relatives specified in the description. The word "lottery" has no technical legal meaning. It must be construed in the popular sense, and with a view of remedying the mischief intended to be prevented. It is defined by Webster, "a scheme for the distribution of prizes by chance, or the distribution itself," and he defines "lot" as "that which causes, falls or happens; that which in human speech is called chance, fortune, hazard," and "to draw lots" is "to determine an event by drawing one thing from a number, whose marks are concealed from the drawer, and thus determining an event." Worcester defines "lottery" as "a hazard in which sums are ventured for a chance of obtaining a greater value." The language of FOLGER, J., in 56 N. Y., 424, may be adopted as a result of the accepted definitions. "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out by the public, what and how much he who pays the money is to have for it, that is a lottery."

Conceding that in this case the interest purchased was not an interest in the Kentucky lottery (which is not clear), that would not, it seems to me, change the substantial nature of the transaction. For a small sum the plaintiff was entitled to a much larger sum, depending upon the result of the drawing of the Kentucky lottery. Whether

that sum came from the Kentucky institution or from the defendant or any one else, was immaterial. If the drawing in the Kentucky lottery was adopted as the wheel of fortune, although the prizes were furnished by others, the character of the transaction was not changed. It is not necessary that there should be an organized institution or that the scheme should be called a lottery. If the defendant had set up a wheel of his own, and sold numbers which if drawn would represent prizes, he would have had a lottery, and whoever purchased numbers which were to be drawn, would purchase and have an interest in that lottery. Is the circumstance that the Kentucky drawing was adopted, material in determining the character of the act done ? Was it not at least a game or device in the nature of a lottery ? It was a practice which is within the very mischief and evil intended to be remedied. It matters not by what name it is called, or what terms are used. It has all the essential features of a lottery, and should be so construed. It has been well said that " the office of the judge is to make such construction as will suppress the mischief and advance the remedy, and to suppress all evasions for the continuance of the mischief." (*Magdalen College Case*, 6 Coke, 125–134.)

It is said that the transaction is a wager or bet that certain numbers will draw, and is therefore not a lottery. This does not follow. Every lottery has the characteristics of a wager or bet, although every wager is not a lottery. A lottery, game or device in the nature of a lottery is not excluded from the operation of the statute because it also partakes of the nature of a wager.

The courts have uniformly looked beyond the mere form or device of the transaction and sought out and suppressed the substance itself. (*Gov'rs of Alms House* v. *Amer. Art Union*, 7 N. Y., 228; *Hull* v. *Ruggles*, 56 id., 424.)

It is claimed that the act of 1851 (chap. 504), is a legislative construction that " policy " is not a lottery. This act makes it a criminal offense for selling lottery policies, or any writing in the nature of " bet, wager, or insurance upon the

drawing or drawn numbers of any public or private lottery. It may be that the defendant was liable under this statute, although in fact no policy or writing of any kind was issued or delivered, but I am at a loss to see upon what principle this act can be held to limit or restrict the meaning of the word lottery in the section under which this action was brought. The particular acts which the defendant may have done in pursuing the lottery business, are perhaps described with more precision than in the section in controversy ; but this cannot impair the meaning of the section as it stands. That section is general, but very comprehensive, and although the particular device adopted by the defendant may not then have been practiced, yet if its comprehensive terms embraced it, the subsequent passage of an act making such device criminal cannot affect its provisions. There is no authority for holding that a criminal remedy by one act supersedes another act giving a civil remedy. (*People* v. *Safford*, 5 Den., 112.) To adopt the construction claimed would tend to open the lottery business, with all its evil consequences, and no court would be justified in holding that such devices were not within the terms of this statute. The veil is too thin and unsubstantial.

The point that the tickets must be produced, was decided in *Grover* v. *Morris* (73 N. Y., 473) against the defendant.

The judgment must be affirmed.

All concur, except ALLEN, J., absent ; RAPALLO, c ., not voting.

Judgment affirmed.