# The State *v.* Stripling.

*Indictment for Selling Pools on Horse Races.*

1. *Special law; construction of statute for suppression. of gambling.* The statute, approved February 26, 1889, entitled an act "for the better suppression of gambling," (Acts of 1888–89, p. 45) prohibiting and denouncing as criminal the sale of any pool or ticket, or the making or taking of any wager, or the entering into any transaction whereby money or other thing of value may be won or lost upon any horse race, prize fight, drill, base-ball game, or any contest of any kind, not occurring in this State, is not open to the constitutional objection that the subject of the act is not clearly expressed in its title.

2. *Same; same.*—The statute, approved February 26, 1889, "for the better suppression of gambling," (Acts 1888-89, p. 45), prohibiting and denouncing as criminal the selling of any pool, or the doing of any act whereby money may be won or lost on a horse race or other contest not occurring in the State, and forbidding any person in the State to act as agent in placing outside the State any pool or other device or wager, or to do anything in the State to aid any person in entering into any transaction whereby he may win or lose money on a horse race or other contest outside the State, is not unconstitutional as being an effort on the part of the legislature to interfere with interstate commerce.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN G. WINTER.

The appellee, James D. Stripling, was arraigned under the following indictment : "The grand jury of said county charge that before the finding of this indictment, James D. Stripling unlawfully sold a pool or ticket upon a horse race, which said race did not occur in the State of Alabama.

"The grand jury of said county further charge that before the finding of this indictment, James D. Stripling unlawfully sold a pool or ticket, or some device or chance for a pool, or made or took a wager, or entered into a transaction with one Dave Dreyfus to purchase for him (said Dreyfus) a pool ticket by which said Dreyfus might win or lose money upon a certain horse race, which said race did not occur in the State of Alabama.

"The grand jury of said county further charge that before the finding of this indictment James D. Stripling, as the agent of some person or persons, to the grand jury unknown, unlawfully sold a pool ticket upon a certain horse race, which said race occurred in the State of Louisiana and not in the State of Alabama.

"The grand jury of said county further charge that before the finding of this indictment James D. Stripling, being in the county of Montgomery, in the State of Alabama, unlawfully acted as the agent of one Dave Dreyfus in procuring or placing outside of the State of Alabama, in the State of Louisiana, for the said Dave Dreyfus a certain pool ticket or wager of one dollar in money, whereby said Dreyfus did win the sum of two dollars in money, upon a certain horse race, which said horse race took place outside of the State of Alabama and in the State of Louisiana, against the peace and dignity of the State of Alabama."

To this indictment the defendant demurred upon the following grounds: "1. Because the law under which said indictment is found, and of which it purports to charge a violation, is unconstitutional and void in that the subject of the act is not clearly expressed in its title. 2d. Because said law is unconstitutional and void in that it is an attempted regulation of intercourse or commerce between the States. 3d. Because said law is unconstitutional and void, in that it is a discrimination against the business and matters occurring and located in other States. 4th. Because said law is unconstitutional and void, in that the legislature of the State can not pass or place restrictions upon occupations or events and matters occurring outside of this State which is not unlawful either in this State or in the foreign State. 5th. Because said law is unconstitutional and void, in that it prohibits a person from doing through the medium of an agent what such person could do in his own proper person. Wherefore defendant prays to be dismissed hence without day."

The court rendered a judgment sustaining the demurrers, quashing the indictment and discharging the defendant. From this judgment the State prosecutes the present appeal.

WILLIAM C. FITTS, Attorney-General, and THOMAS G. JONES, for appellant.—The brief of appellant's counsel upon the first proposition, discussed on the present appeal, is copied in the opinion.

There is clearly nothing in the second objection. The acts forbidden in no sense constitute commerce between the States.—*Paul v. Virginia*, 8 Wall. 183; *Nathan v. The State of Louisiana*, 8 How. 73.

SANFORD & SON, *contra*.

McCLELLAN, J.—The question involved in this case is the constitutionality of an act approved February 26, 1889, "For the better suppression of gambling."—Acts 1888-89, p. 45. Under this caption, the act prohibits and denounces as criminal the selling of any pool or ticket, or the making or taking of any wager, or the entering into any transaction whereby money or other thing of value may be won or lost upon any horse-race, prize fight, drill, base-ball game or other contest of any kind not occurring in this State.

The first ground of attack upon the constitutionality of this statute is, that the subject with which it deals is not expressed in its title, and upon this point we adopt the brief of counsel for appellant as the opinion of the court: The title of act is "the better suppression of gambling," and it authorizes the inclusion in the body of the act all provisions appropriate to "better suppress" whatever may be justly included in the term "gambling." If the things included in the body of the act and forbidden by it are "gambling," then there is nothing for the objection to stand on; for the subject is clearly expressed in the title. This court has never held that the title must specifically name or describe every element of the subject. It is sufficient if the things regulated or forbidden in the body of the act fall within the generic purpose expressed in the title, and relate to it. Details are matters of legislative, not of judicial discretion, within these limits.—*Ballentyne v. Wickersham*, 75 Ala. 537.

The inquiry then narrows itself to this, are the acts forbidden "gambling" in the common and ordinary acceptation and meaning of the word. It has no technical or legal meaning distinct from its common meaning. Gambling in its ordinary signification means, "To play

[The State v. Stripling.]

a game, especially a game of chance, for stakes; to risk
money or other possession on an event, chance or con-
tingency; pretence to buy or sell depending upon chance
variations in prices for gain,'' &c.—Standard Dictionary,
Vol. 1, p. 742.   "To practice gaming; to play for money,
or any other stake or prize; to game.''—Worcester's
Dictionary, p. 603.   "All contracts between two or more
persons, whereby they agree to risk their money or prop-
erty upon contingency or chance, which in the nature of
things may or may not happen, and whereby the one
party will be the gainer and the other a loser, are deemed
to be gambling contracts.''—8 Am. & Eng. Encyc. of
Law, p. 993.   See also *Brus's Appeal*, 55 Pa. St. 294;
*Bell v. State*, 5 Sneed, 507; *Wilkinson v. Gill*, 74 N. Y.
63; *Shropshire v. Glascock*, 31 Am. Dec. 189; Bishop on
Stat. Crimes, § 858; Wharton's Criminal Law, § 1465.
Whether or not betting on a horse-race is a criminal
offense, it is certainly a gambling or wagering contract
under our Code.—Code of 1886, § 1742.

Betting on horse-racing has often been held a game
within the meaning of statutes against gaming,—(18
Maine, 337, and numerous authorities cited; 8 Am. &
Eng. Encyc. of Law, p. 1038, note 5) ; and particularly
selling pools on them—a leading case per COOLEY, J.,
*People v. Weithoff*, 51 Mich. 203.   Similar decisions have
been rendered relative to the other games or sports men-
tioned in the present statute.—*Tollet v. Thomas*, L. R. 6
Q. B. 514; *Holden v. Fitchburg R. R. Co.*, 129 Mass. 271;
*Edwards v. State*, 8 Lea, 411.

Gambling in its legal as well as popular signification,
includes bets and wagers such as the act refers to.
Whether or not such "gambling" is punishable as a
criminal offense of course depends upon the phraseology
of the gaming statutes.   The act is none the less "gamb-
ling" in the eye of the law, because the statute does not
make it a criminal offense.   The legislature in the exer-
cise of its wide discretion, may punish some species of
gaming or gambling by penal enactment because of its
injury to morals, &c., and yet not make such provisions
for the other acts which are fewer in number and less
detrimental; but the act of "gambling" which is not
punished criminally is none the less "gambling" because
it is amenable only to the civil law.   One of the most
pernicious forms of gambling is "speculating in futures,".

on margins, and settling differences only. It has been the source of great injury to morals and been the theme of wide-spread phillipics against "gambling," both in the press, pulpit, courts and legislative halls—but it is not a criminal offense. Would any one say that such practice was not included in the word "gambling," because it has not heretofore been made the subject of a penal statute? Would any one be surprised to find a provision against it, under the title of an act for the "Better suppression of gambling?" Clearly it would be included in the spirit, terms and title of such an act. So, too, of the offenses now punished criminally by the present act.

It will be noted that the word "gambling" is not found at all in our Criminal Code. That Code uses the term "gambler" only once, and that in section 4047. Wherever it makes provision for such acts of "gambling" as it deems worthy of criminal punishment, it uses the word game or gaming. The Civil Code, however, speaks of "gambling and wagering contracts."—§§ 1742, 1743. The acts made offenses by the present statute are already made "gambling contracts" under the Code; and the act in question simply extends the criminal law over them. It was urged in the court below that because our law-makers had not used the word "gambling" in the penal statutes heretofore, but only the word "gaming," &c., that one in reading the title of an act "for the better suppression of gambling," would expect to find in the body of the act only provisions against such practices or kindred practices as had been heretofore included under the term gaming in the Criminal Code. This is a *non sequitur* for several reasons: 1st. The State having already denounced the practices now included in the present statute as "gambling contracts" by the provisions of Civil Code, the logical inference from the departure from the long use of the word gaming, and substituting "gambling" for it, would of itself denote an intent in a penal statute to punish acts not up to that time included in its penal statutes as "gaming." 2d. Because the legislature prior to this enactment had made penal only certain kinds of gaming, and used the term "gaming" in reference to them, cannot restrict the meaning of the word "gambling" in a subsequent penal statute, to offenses such as had been theretofore de-

nounced as "gaming." If the present act had not spe-
cified the acts it punished, and had used the word
"gambling" games or contracts, there might possibly
be some plausibility in the argument, but in the present
case there is nothing for the argument to rest on that
the word "gambling" had a fixed and well defined legal
meaning, which restricted its meaning to the class of
offenses, or of a like nature, as were already punishable;
and that the word was used in such a sense, and not in
its ordinary or popular signification, *in this statute*. The
act is not open to the objection that its subject is not
clearly expressed in its title.

It is further insisted that the act is violative of the
Federal constitution for that it is an effort by the legis-
lature to interfere with inter-state commerce; its second
section forbidding any person in this State to act as the
agent of any other person in placing outside of this State
for such other person any pool or ticket, or other device
or chance, or wager, or to do anything in this State to
aid any other person in entering into any transaction
whereby he may win or lose money or other valuable
thing upon any horse-race, prize fight, drill, base ball
game, or other contest taking place outside this State.
We are unable to see how this is an interference, or has
anything to do, with inter-state commerce. But if it
touches such commerce at all it is in such way as is within
State competency. The State has a right to protect the
lives and morals of its people against acts which threaten
them even though such acts can only be accomplished
through some instrumentality of inter-state commerce.
And it might as well—indeed with less want of force—
be said that a law of the State inhibiting agencies here
from procuring from other States and disseminating
here obscene literature, or criminal libels upon our citi-
zens, would be an unwarranted interference with com-
merce between the States. The right of the State to
enact and enforce such laws, assuming they touch upon
such commerce, is supported by the same principle which
upholds State statutes forbidding the running of trains
on Sunday, and it cannot, we think, be doubted that
such acts are free from the constitutional objection sug-
gested.

The act in its declaration of the offense and imposition
of penalties has no reference to or bearing upon any act

done beyond the limits of the State. Its operation is solely upon acts done within the State, and it is upon all persons doing those acts in the State whether as principal or agent. The fact that similar acts done here, either by citizens or non-residents, with respect to contests of speed, skill and the like occurring here are not denounced as crimes by this act, is of no consequence. That was a matter entirely within legislative discretion, and many considerations might be conceived for the exercise of that discretion as it has been exercised in the act. The inhibitions of the statute have nothing to do with anything occurring beyond the State, as we have stated; but only upon acts done here; and they apply with equal force to citizens of this and all other States.

The act, we conclude, is constitutional. The demurrer to the indictment below should have been overruled. The judgment of the city court sustaining it is reversed, as also the judgment discharging the defendant upon quashing the indictment. A judgment will be here entered overruling said demurrer, and vacating the judgment quashing the indictment, and discharging the defendant. The cause will be remanded.

Reversed and remanded.