THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MAX BLOOM, Appellant.

First Department, February 3, 1928.

Crimes — policy — violation of Penal Law, § 974 — defendant, instead of drawing numbers, utilized certain last figures of weekly sales report of Monday's Stock Exchange — scheme was same as selling chance against numbers to be drawn or selected — sale of jewelry on installment basis, policy slip being given with each weekly installment, was mere cloak and not legitimate transaction.

The defendant was properly convicted of a violation of section 974 of the Penal Law, of gambling, commonly known as policy. It appears that he operated extensively through several agents an alleged jewelry business, under which his customers paid down one dollar per week and were given a slip upon which were numbers, under an arrangement whereby the numbers corresponded to certain last figures of the weekly sales report of Monday's Stock Exchange, and the holder of the slip would be entitled to a prize. The scheme of using the last figures of the weekly sales report amounted to the same thing as the drawing of numbers.

The consideration for the slip given to each customer was the purchase of an article of jewelry upon weekly installments, and the slips were not given away by the defendant, but were given as an inducement for the purchase of the jewelry.

McAVOY, J., dissents, with opinion.

APPEAL by the defendant from a judgment of the Court of Special Sessions of the City of New York, rendered on the 5th day of May, 1927.

*Samuel Gottlieb* of counsel [*Harold L. Kunstler*, attorney], for the appellant.

*Archibald Firestone, Deputy Assistant District Attorney*, of counsel [*Joab H. Banton, District Attorney*], for the respondent.

FINCH, J. The defendant appeals from a conviction of knowingly having in his possession certain records of a game of chance, in violation of section 974 of the Penal Law (as amd. by Laws of 1926, chap. 435).

The defendant introduced no evidence of any kind to rebut the People's case, but relied and now relies upon certain technical objections. The defendant was operating in a large way in three States, having many agents engaged in soliciting customers and had obtained, according to his own admission when arrested, " several thousand." Ostensibly the defendant was engaged in selling jewelry on a small installment basis of one dollar a week. Obviously this sale of jewelry was but a cloak and it so appeared from the record, without contradiction by any evidence adduced on the part of the defendant. When the defendant was arrested he protested against the arresting officer taking any more of the slips because he had enough of the gambling evidence. The witness for the People testified: " While seizing the records I had several packages made up and the defendant says to me: ' What's the use of taking any more, you got enough of the gamble.' " It also appears from the record that the payment of a dollar a week entitled the person paying to one of these chances and also entitled him to a watch or other piece of jewelry, depending upon the total amount paid, when he had paid up the sum of thirty-nine dollars. " Q. Thirty-nine dollars cash? A. Yes. I says: ' Well, how will I get one of these? ' ' Well,' he says, ' the girl will take your name; the girl has your name and address and I will send one of my salesmen to your house.' * * * Q. He at no time said: ' Yes, this will entitle you to a chance.' A. Not at that time. Q. At any time did he? A. Yes, after we seized and questioned him about the manner in which he was conducting this, and which he says: ' It speaks for itself there. You can win five hundred dollars, but we don't charge anything for this; we give this away with the

dollar.' I says: 'What dollar?' I says: 'The dollar that your salesman receives from his customers?' He says: 'Yes.'" It also appears that many customers had paid a dollar a week for several weeks and had then discontinued the payments and had lost their money, receiving nothing in return. "I also asked the defendant, 'How many people have paid in to this here at a dollar a week and had discontinued that paying of a dollar and which you have their money and which they are not making calls for?' He says, 'Why, I couldn't really tell you.' I says, 'How many customers have you got?' He says, 'Why, I got several thousand.' I said, 'How many agents go out on the road?' He says, 'Ten or twelve.' I says, 'Where do they operate?' He says, 'In the State of New Jersey, Connecticut and in New York.'"

It also appears that no one had ever won a prize. "I says, 'How long are you conducting this office?' He says, 'About two years.' I says, 'Has anybody ever won any prize?' He says, 'There hasn't.' I said, 'Well, the chances then are too large against them, and the chances are one hundred thousand to one for somebody to win a chance.' He says, 'Yes.'"

The defendant first urges that there is no proof that the slips admittedly possessed by the defendant technically were policy slips. The slips themselves are in evidence and it clearly appears that they were used in a lottery based on selected numbers. In other words, the defendant sought to escape from the words of the statute before it was amended by prohibiting the selling of chances against numbers to be drawn or selected. Instead of a drawing of numbers, this defendant, as appears from the slip itself, utilized certain of the last figures of the weekly sales report of Monday's Stock Exchange. Policy has been judicially defined as a lottery. In *Wilkinson* v. *Gill* (74 N. Y. 63) Chief Judge CHURCH, in dealing with the question whether the term "policy" came within the term "lottery," being the converse of the case at bar, wrote: "The question is therefore presented, whether the 'policy' transactions were within the statute. The statute is very broad and comprehensive. It will be observed that it is not confined to a sale of tickets or parts of tickets, but includes the sale of any share or interest in any illegal lottery."

The appellant relies upon the case of *People* v. *Mail & Express Co.* (179 N. Y. Supp. 640; affd., 192 App. Div. 903; affd., 231 N. Y. 586) as an authority in support of the contention that there was lacking a necessary element of the crime, namely, a consideration. In that case it was held that the New York *Evening Mail* was not guilty of a violation of the statute by the gift of cards bearing certain numbers, the possession of which card entitled the holder thereof

to a prize in the event the number thereon should be drawn and published in the *Evening Mail*. The basis of the decision was that " valuable consideration must be parted with, or there must be an expressed or implied agreement to pay it." In determining that there was no such consideration, the court was careful to point out that the opportunity to participate in the prize drawing cost nothing, inasmuch as the cards were given away freely and there was not even any necessity of purchasing the *Evening Mail* in order to see the winning numbers. The court said: " The holder of the card has parted with nothing up to the point of acquiring it, and it must be clear it is not compulsory on his part to buy the *Evening Mail* to see the winning numbers, inasmuch as in the very advertisement complained of we find this language, ' You can see the *Evening Mail* on file free at the following places,' etc. The statement in the Mail that ' the way to participate is simply to get one of the free *Evening Mail* gift coupons and watch the *Evening Mail* for winning numbers,' does not, in my opinion, strengthen the People's contention that the word ' watch ' is a clear manifestation of the criminality of the whole project. While, in most instances, it is fair to assume that the coupon holder would purchase a paper, thereby increasing its circulation, still the fact remains that those who wish to ' watch ' the paper are under no obligation whatsoever. The purchase of the paper is purely a voluntary act."

In the case at bar it clearly appears that the consideration for the slip was the purchase of an article of jewelry upon weekly installment payments thereof of one dollar. This is demonstrated by the fact that the People's witness was not given a slip upon his request, but was requested to leave his name and address for the purpose of having one of the defendant's salesmen call at his house. The only reasonable inference to be drawn from the record is that the slip was given as an inducement to the purchase of the jewelry. There was thus present in the case at bar the element which was lacking in *People* v. *Mail & Express Co.* (*supra*), namely, a purchase of the defendant's wares as a condition precedent to the obtaining of the slip.

It follows that the judgment appealed from should be affirmed.

DOWLING, P. J., MARTIN and O'MALLEY, JJ., concur; McAvoy, J., dissents.

McAVOY, J. (dissenting). The evidence shows no possession by defendant of a policy slip which represented and was a record of a chance, share or interest in any numbers sold, drawn or selected in a game commonly called policy and commonly used in carrying on and promoting the game called policy. This is the so-called policy slip:

" (This circular is given away absolutely free to the public)
" No. 15165                                    Date. . . . . . . . . . . . . .
" In order to acquaint our trade with the High Grade line of
Diamonds and Jewelry we have in stock we are distributing our
advertising money direct to the public and offering this circular
free of charge.

" HERE IS OUR SPECIAL OFFER

" If the last five figures of the N. Y. Stock Exchange total weekly
sales as published every Monday morning (in the N. Y. Times)
correspond at any time during 39 consecutive weeks from the date
of THIS ADVERTISING CIRCULAR with the number and date stamped
hereon which is GIVEN AWAY FREE TO THE PUBLIC, we will give to
any holder of record upon presenting same at our office within a
week of appearance

" $500.00 IN CASH
" OR 1 SOLITAIRE DIAMOND VALUED AT $500

" If the last four figures of the weekly sales report of Monday's
Stock Exchange should be one or two higher or one or two lower,
than the numbers on this circular we will give you

" $250.00 IN CASH
" OR 1 SOLITAIRE DIAMOND VALUED AT $250

" If the last four figures of the weekly sales report of Monday's
Stock Exchange correspond with the last four figures on this circular
we will give you

" $100.00 IN CASH
" OR 1 SOLITAIRE DIAMOND VALUED AT $100

" If the last three figures of the N. Y. Stock Exchange correspond
with the last three figures on your circular we will give you free a

" $39.00
" ARTICLE OF JEWELRY
"Advertising Circular

" OUR POLICY
" Is to make every possible effort to please our customers.   If
you are pleased tell others, if not tell us.

" LONDON JEWELERS, INC.

" OUR GUARANTEE
" We guarantee our merchandise to be as represented and back
same with our entire capital and experience.

" YOUR CHOICE
" We carry a complete line of jewelry, from $39.00 and up.

"Advertising Circular."

This is no policy slip.

The rule in New York is that in order to make out a case under our statute (as to lotteries), the court must find in the facts charged an element of risk; in other terms, there must be something of value ventured for some gain. The feature of a gamble must be present in all its aspects. Valuable consideration must be parted with, or there must be an express or implied agreement to pay it. No feature of loss or gain for a value given is found here. Neither is this scheme a lottery. In a lottery as commonly defined a pecuniary consideration must be an accompaniment of the right to participate in the chance or lot. " Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery." (*Hull* v. *Ruggles*, 56 N. Y. 424.)

This was the police officer's testimony who made the arrest and presented the charge: " Q. So you were not paying anything for this at all, were you, that is, People's Exhibit 1? A. I didn't pay anything. * * * Q. And the chance was not to cost you any more. A. No. By Justice CALDWELL: Q. But you were not to get the chance unless you bought a watch, were you? A. Why, the transaction stopped right there, your Honor, when he sent me to the desk and the girl took my name and address. Q. Did he say buying the watch he would give you a chance? A. He did not. By Mr. Kunstler: Q. You asked him for the chance, did you not? A. I did. That is all. People rest."

Thus no crime was made out and defendant should have been acquitted and discharged.

The judgment appealed from should, therefore, be reversed and the defendant discharged.

Judgment affirmed.