## Commonwealth of Pennsylvania v. Banks, Appellant.

Argued December 9, 1929.

Before PORTER, P. J., TREX-
LER, KELLER, LINN, GAWTHROP, CUNNINGHAM and
BALDRIGE, JJ.

*Michael J. McEnery,* for appellant.

*Charles F. Kelly,* Assistant District Attorney, and
with him *John Monaghan,* District Attorney, for ap-
pellee.

OPINION BY KELLER, J., February 28, 1930:

Appellant was convicted of setting up a lottery, and
being concerned in the management, conducting and
carrying on of the same in the City of Philadelphia,
in violation of sections 53 and 54 of the Criminal Code
of 1860. He contends that he should have been in-
dicted under section 55, forbidding the setting up of
any game or device of hazard, with cards, dice, bil-
liard balls, shuffle boards, or any other instrument, etc.,
at which money may be played for, staked or betted
upon; and that the judgment in consequence must be
reversed. He argues that as the Act of February 17,
1762 (1 Sm. L. 246), forbade "lotteries" in much the
same terms as the Act of 1860, the term must be

limited to such forms of lottery as were then known and legislated against and cannot be applied to a scheme not then in existence. Practically the same contention was made as long ago as 1818 and decided adversely to the appellant. In Seidenbender v. Charles, 4 S. & R. 151, 164, Judge GIBSON said on this point: "I grant the legislature may not have had this particular kind of lottery in view, but was it intended to restrain the operation [of the Act of 1762] to those particular kinds of lotteries then in use, and to those only? I apprehend not. It is very clear that a particular kind of mischief, differing not in form or substance, but in degree only from the one under consideration, and only less pernicious in its consequences, first induced the legislature to act on the subject. Shall the letter, which is sufficiently comprehensive to embrace this case, be restrained to the particular mischief then existing, and exclude one of the very same stamp, merely because it was not then practiced? This surely would not be a sound construction . . . . . . We are bound to extend it to every case within the letter, which we can suppose would, if foreseen, have been specially provided for."

The Act of 1860 does not define "lottery"; the prohibition is general. Our concern, therefore, is to see whether the scheme conducted by the appellant may reasonably and fairly be included within the term as commonly used and understood.

The scheme used by the appellant is familiarly known as the "number game." In addition to the "player," it employs a "banker" or "backer," a "writer," and sometimes a "pick-up man." The player selects a number of three figures and plays an amount of money upon it which he pays to the writer. The writer has a book containing slips in triplicate with carbon sheets between. He writes the number selected by the player in the book, gives the white copy to the player, the yellow copy to the backer and re-

tains the tissue copy in the book. If a pick-up man is employed he gathers the yellow slips or tickets from the various writers and delivers them to the backer. The winning number is determined next morning by reference to the published statement of the New York Clearing House, with respect to exchanges and balances. These are published every morning in the daily papers in figures of even millions and the last two figures of the exchanges with the last figure of the balances constitute the winning number. For example if the clearing house statement shows exchanges of 547 millions, and balances of 105 millions, the winning number is 475; if exchanges of 673 millions and balances of 119 millions, the winning number is 739. The outcome is wholly a matter of chance. Skill has no place in it. If the player wins he gets from the backer 600 times the amount he played; if he loses he gets nothing; play can be made for any amount from one cent up.

It is evident that this is but a variation of "policy" playing, differing chiefly in the facts that any number up to 999 can be played instead of only 78 numbers, and that the winning number is determined by the statement of the New York Clearing House Exchanges and Balances instead of by a drawing from a wheel; both equally the subject of chance. For description of "policy" playing, see 38 Corpus Juris 298, note 28 (b). See also Wilkinson v. Gill, 74 N. Y. 63, 67.

In Com. v. Manderfield, 8 Phila. 457, 459, Judge PAXSON defined a lottery to be "A scheme for the distribution of prizes by chance," which is practically the same as Webster's definition; and in Com. v. Sheriff, 10 Phila. 203, 204, he said: "Whatever amounts to this, no matter how ingeniously the object of it may be concealed, is a lottery." WORCESTER defines it: "A game of hazard in which small sums are ventured for the chance of obtaining a larger value either in money or in other articles." The Century Dictionary says:

"In law the term "lottery" embraces all schemes for the distribution of prizes by chance, such as policy playing, gift exhibitions, prize concerts, raffles at fairs, &c., and includes various forms of gambling." In Hull v. Ruggles, 56 N. Y. 424, 427, the Court of Appeals defined it as follows: "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery." This fits our case exactly; so does the definition in Bishop on Statutory Crimes, Sec. 952 (3d Ed.): "A lottery may be defined to be any scheme whereby one, on paying money or other valuable thing to another becomes entitled to receive from him such a return in value or nothing as some formula of chance may determine."

The great weight of authority in this country is that "policy" playing is a lottery. It was so held in Com. v. Sullivan, 146 Mass. 142, 15 N. E. 491; Com. v. Wright, 137 Mass. 250; Wilkinson v. Gill, 74 N. Y. 63; Smith v. State, 68 Md. 168, 11 Atl. 758; People v. Elliott, 74 Mich. 264, 41 N. W. 916; Thomas v. State, 118 Ga. 774, 45 S. E. 622; State v. Harmon, 60 Mo. App. 48; State v. Wilkerson, 170 Mo. 184, 70 S. W. 478; State v. Martin, 68 N. H. 463, 44 Atl. 605; People v. McCarty, 62 How. Pr. (N. Y.) 152, 154; Boyland v. State, 69 Md. 511, 16 Atl. 132, 133, and many other cases. Section 54 of the Criminal Code expressly recognizes "policy" as one of the forms of lottery.

Appellant contends that his scheme differs from a lottery in three respects: (1) That it is in effect a bet or wager; (2) that any number of players may select the same number; (3) that there are no fixed prizes but the player, if he wins, receives a sum proportioned to the amount played. All of these contentions were advanced as respects "policy playing" in the case of Com. v. Wright, supra, and were disposed

of by Mr. Justice HOLMES then of the Supreme Judicial Court of Massachusetts, now of the United States Supreme Court, (pp. 251, 252), as follows: "It may be that the difference between this and a single wager or the cast of a die is only one of degree; but if so, the difference is sufficiently marked to warrant the finding of the jury. We cannot say as matter of law that the facts that the prize was money and not specific, and that more than one could select the same number with the same result prevented the game from being a lottery. It is a lottery according to the popular use of the word as shown by the dictionaries, according to history, to which lotteries with money prizes not specific have been known, and according to the course of the decisions: Wilkinson v. Gill, 74 N. Y. 63."

In Wilkinson v. Gill, supra, (p. 67) the Court of Appeals of New York said: "It is said that the transaction is a wager or bet that certain numbers will draw and is therefore not a lottery. This does not follow. Every lottery has the characteristics of a wager or bet, although every wager or bet is not a lottery. A lottery, game or device in the nature of a lottery, is not excluded from the operation of the statute because it also partakes of the nature of a wager. The courts have uniformly looked beyond the mere form or device of the transaction and sought out and suppressed the substance itself." It was there held that any device of chance in the nature of a lottery is within the prohibition of the statute against lotteries. If there be a *scheme* for the distribution of prizes by chance among those paying for the privilege, and not an isolated wager, it is a lottery and it can make no difference in principle whether the prize be a specific sum in money, or be proportioned to the amount paid by the purchaser of the ticket or slip; whether one or many persons can choose the same number.

The cases dealing with "policy" playing cited above would rule this case squarely against the appellant if

the winning number in the "number game" were drawn from a wheel, or by lot, instead of being determined by the chance of the New York Clearing House statement. But is the statutory provision against lotteries to be nullified because, using the phrase of Chief Justice TILGHMAN, also in Seidenbender v. Charles, supra, p. 162, *ingenuity has devised a scheme* by which the winning number in the lottery is determined by a method of pure chance other than the drawing of a lot or from a wheel? We think not. The statute is not directed against any particular method of chance by which the winning number is determined. There is nothing inherently evil about a drawing from a wheel or lot that subjects them to special condemnation. They may be legitimately employed, as in drawing jurors from a wheel, or drawing lots for places in primary election ballots. The evil aimed at in the statutes against lotteries is the employment of pure chance in determining what prize or return in money, or other valuable thing, the player, or buyer of a ticket, slip or other device, gets in return for the money paid by him; and where the element of pure chance is present in the plan devised for fixing the amount the player is to receive it makes no difference whether it is determined by a drawing from a wheel, or by lot, or by some other scheme devised by the ingenuity of men seeking ways to evade the law.

We are of opinion that the court below committed no error in holding that the "number game" as above outlined constituted an illegal lottery.

Nor are we impressed by the argument that the evidence was insufficient to sustain a conviction. The county detectives when they visited the defendant's home on December 22, 1928, found a number of "books" used in the "number game" and a large quantity of yellow slips, such as are given the "backer," dated December 21, 1928, and December 22, 1928, in a bureau belonging to defendant, and a great

quantity of slips dated December 20, 1928, partly scorched, were recovered from the furnace in the cellar where the defendant endeavored to burn them as soon as the door bell was rung by the detectives. They also found two adding machines, which are used in tabulating the slips. This constitutes the entire paraphernalia necessary for operating the game. The defendant admitted that he was the backer or banker, and complained that he was having considerable trouble with his colored "writers," because other "backers" would approach them with offers of a little bit more money than he was paying, or by the added inducement of a basket of groceries at the end of the week. He said he was not making as much money as a lot of people thought he was; that on the day previous, December 21st, his profits from the game were only $180. While the detectives were in the house, in the neighborhood of two o'clock A. M., a colored man rang the door bell and on being let in by the detectives they found on him a large amount of money but no slips or tickets. It is not necessary for conviction that there be evidence of the actual operation of the lottery: Thomas v. State, 118 Ga. 774, 45 S. E. 622; Clark v. State, 4 Atl. 327 (N. J.); Dorbert v. State, 11 Atl. 707 (Md.). See also Com. v. Dana, 2 Metcalfe (Mass.) 329. It is sufficient if the defendant be found in possession of the paraphernalia necessary for operation; and when supplemented by defendant's admissions that he was concerned in its conduct or management, as a backer, the case was certainly for the jury.

Insufficient evidence is not ground for arrest of judgment: Com. v. Bateman, 92 Pa. Superior Ct. 53, 56; Com. v. Weaver, 61 Pa. Superior Ct. 571, 581; Com. v. Mock, 23 Pa. Superior Ct. 51, 54; Swan v. Com., 104 Pa. 218, 221; Sadler on Criminal Procedure, Sec. 516.

The assignments of error are overruled. The judgment is affirmed and it is ordered that the defendant

appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.