## Lucky Number Dance Tickets

RUTTER, Deputy Attorney General, July 9, 1940.—By your communication of June 3, 1940, you request this department to advise you whether sections 601 and 602 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §§4601, 4602, are violated by the factual situation presented by the following case stated.

Tickets are sold for a dance which is actually held with all paraphernalia necessary for a dance, such as orchestra, etc. The tickets are numbered, and stubs therefrom, also numbered, are retained by the sellers. During the course of the dance a drawing is held of the stubs, and prizes are awarded to the holders of the tickets whose numbers correspond to the numbers of the stubs so drawn. It is not necessary for the purchaser of the ticket, the number of which is announced as a prize winner, to be in attendance at the dance in order to be eligible to receive a prize. The tickets sell for 10 cents each. A first prize is given of $500, one of $75, one of $50, one of $25, ten of $10, and 50 of $5. ·

From the foregoing statement of facts it will be seen that total cash prizes of $1,000 are awarded at a dance to which the price of admission is only 10 cents. It would thus require 10,000 people purchasing tickets to enable

the operators of the dance to take in as much as they gave away. If this is not a lottery, it is a philanthropic enterprise, the proportions of which do not justify its apparent obscurity.

To enable the operators of the project to make a profit would necessitate the selling of tickets considerably in excess of 10,000 so that the cost of employing an orchestra, and other incidental expenses could be met, in addition to the prizes awarded. If the purchasers of the tickets sold were expected to attend the dance, the dimensions of the dance hall would necessarily be Gargantuan. Obviously, the vast majority of those who purchase tickets are not expected to attend the dance. In short, the whole scheme is a lottery, not even thinly disguised in the habiliments of respectability. Sections 601 and 602 of The Penal Code, supra, follow:

"Section 601. Lotteries.—All lotteries, whether public or private, for moneys, goods, wares or merchandise, chattels, lands, tenements, hereditaments, or other matters or things whatsoever, are hereby declared to be common nuisances. Every grant, bargain, sale, conveyance or transfer of any goods or chattels, lands, tenements or hereditaments, which shall be made in pursuance of any such lottery, is hereby declared to be invalid and void.

"Whoever, either publicly or privately, erects, sets up, opens, makes or draws any lottery, or is in any way concerned in the managing, conducting or carrying on the same, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars, or undergo imprisonment, by separate or solitary confinement at labor, not exceeding one (1) year, or both.

"Section 602. . . . Whoever sells, or exposes to sale, or causes to be sold or exposed to sale, or barters or exchanges or causes or offers to be bartered or exchanged, or advertises or causes to be advertised for sale, barter or exchange, any lottery ticket or share, or part thereof,

or any lottery policy or any writing, certificate, bill, token or other device purporting or intending to entitle, or represent as entitling the holder or bearer, or any other person, to any prize to be drawn in any lottery, or any part of such prize or any interest therein, or in any newspaper, magazine or periodical owned or controlled by him, publishes or causes to be published, any advertisement of any lottery ticket, share, policy, writing, certificate, bill, token or device, or of any lottery drawing or lottery scheme, or any prospectus, scheme, or other advertisement of any person conducting, managing or controlling any lottery, or acting as agent therefor, is guilty of a misdemeanor, and on conviction, shall be sentenced to imprisonment, by separate and solitary confinement at labor, not exceeding one (1) year, or to pay a fine not exceeding five hundred dollars ($500), or both.

"The purchaser of such ticket, policy or device shall not be liable to any prosecution or penalty, by virtue of this or any other law of the Commonwealth, and shall, in all respects, be a competent witness to prove the offense."

Both of the foregoing sections were derived from the Criminal Code of March 31, 1860, P. L. 382, 18 PS §§1561, 1562.

In Commonwealth v. Banks, 98 Pa. Superior Ct. 432 (1930), the court had occasion to pass upon sections 53 and 54 of the Criminal Code of 1860, supra. The Act of 1860 did not define the term "lottery"; nor does The Penal Code. Consequently it was incumbent upon the court itself to decide what a lottery is. We quote from the opinion of the court, written by Judge Keller, beginning at page 435:

"In Com. v. Manderfield, 8 Phila. 457, 459, Judge Paxson defined a lottery to be 'A scheme for the distribution of prizes by chance,' which is practically the same as Webster's definition; and in Com. v. Sheriff, 10 Phila. 203, 204, he said: 'Whatever amounts to this, no matter

how ingeniously the object of it may be concealed, is a lottery.' Worcester defines it: 'A game of hazard in which small sums are ventured for the chance of obtaining a larger value either in money or in other articles.' The Century Dictionary says: 'In law the term "lottery" embraces all schemes for the distribution of prizes by chance, such as policy playing, gift exhibitions, prize concerts, raffles at fairs, &c., and includes various forms of gambling.' In Hull v. Ruggles, 56 N. Y. 424, 427, the Court of Appeals defined it as follows: 'Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.' This fits our case exactly; so does the definition in Bishop on Statutory Crimes, Sec. 952 (3d Ed.): 'A lottery may be defined to be a scheme whereby one, on paying money or other valuable thing to another becomes entitled to receive from him such a return in value or nothing as some formula of chance may determine.' "

Continuing at page 437, Judge Keller said:

"In Wilkinson v. Gill, supra, (p. 67), the Court of Appeals of New York said: 'It is said that the transaction is a wager or bet that certain numbers will draw and is therefore not a lottery. This does not follow. Every lottery has the characteristics of a wager or bet, although every wager or bet is not a lottery. A lottery, game or device in the nature of a lottery, is not excluded from the operation of the statute because it also partakes of the nature of a wager. The courts have uniformly looked beyond the mere form or device of the transaction and sought out and suppressed the substance itself.' It was there held that any device of chance in the nature of a lottery is within the prohibition of the statute against lotteries. If there be a *scheme* for the distribution of prizes by chance among those paying for the privilege, and not an isolated wager, it is a lottery and it can make no difference in principle whether the prize be a specific

sum in money, or be proportioned to the amount paid by the purchaser of the ticket or slip; whether one or many persons can choose the same number."

See also Commonwealth v. Chirico et al., 117 Pa. Superior Ct. 199 (1935).

In Commonwealth v. Zotter, 131 Pa. Superior Ct. 296 (1938), President Judge Keller used the following language, beginning at page 298:

"The 'Numbers' game is a form of lottery. Its mode of operation has been explained in *Com. v. Banks*, 98 Pa. Superior Ct. 432 and *Com. v. Chirico*, 117 Pa. Superior Ct. 199, 177 A. 591. There may be changes made in details from time to time, but the essential plan or scheme remains the same. It needs no house, room, etc., to be set up where people who play it must meet and assemble or where its operations are to be carried on. The number or policy slips can be sold anywhere—on the streets, in barber shops, news-stands, wherever the operators or 'bankers' or 'backers' can place a 'writer' or a 'pick-up man'; and the operators do not have to establish a definite place in which to carry on the lottery. All they need is a place in which to keep their books of slips, and to examine the slip copies or carbons turned in to them by the writers and see who, if any, have the lucky numbers, as determined by the plan of operation. And this place may be moved about as often as the operators choose. It does not have to have a fixed location from which to operate."

It is quite clear from the foregoing quotations from the authorities that the facts in the instant case disclose what is in reality a variation of the "numbers game"; and it is equally clear thereunder that the numbers game is a form of lottery. It follows, therefore, that the scheme outlined in the statement of facts set forth above is a lottery within the prohibition of sections 601 and 602 of The Penal Code, and you are accordingly so advised.