THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED
PIERSON, Appellant.

First Department, March 11, 1952.

*Max Fruchtman* of counsel (*Macy Halpert,* attorney), for appellant.

*George Tilzer* of counsel (*Herman J. Fliederblum* with him on the brief; *George B. DeLuca, District Attorney*), for respondent.

COHN, J. The complaint in this action, which was sworn to by the police officer who arrested defendant, states that defendant " in violation of Section 986 of the Penal Law of the State of New York, unlawfully engaged in Book Making, and received sums of money from divers persons as bets upon the results of contingent events, to wit: the results of single action and Bolito policy and double action policy, as appears from the following: ". There is then set forth a recital that the officer observed three unknown persons approach defendant; and that he overheard a conversation between each of the unknown persons and the defendant; and that he saw each hand defendant money in bill form; and that defendant thereafter repeated the wagers to a man immediately to his right, who was making entries in a notebook. The information concludes with the following statement: " That the defendant was not within the grounds or enclosure of a race track and was not engaged in pari-mutuel betting on horse races conducted in the manner and subject to the conditions and supervision provided by Chapter 254 of the Laws of 1940."

When defendant was arraigned for trial before the Magistrate, who sat as a Court of Special Sessions, he was informed by the court officer that the charge against him was bookmaking.

On the trial the arresting officer testified that he had defendant under observation for about five minutes, during which time three unknown persons approached defendant, at different intervals. He overheard the first man say to defendant, " Let me have 7 for one dollar," and saw him give defendant money in bill form.

The second person, a woman, said to defendant, " Let me have 8 for five-fifty, five for two and 83 for fifty," to which defendant replied " O.K. that's eight dollars." She then gave defendant money in bill form.

The third person said to defendant " Hiya, Fred, I've got two goods ones, 57 for fifty, 75 for fifty ", and handed him money in bill form.

The officer testified that defendant repeated each of the aforesaid wagers to another man, who, seated on a chair which was

on the sidewalk near the curb, presumably recorded them. The officer then testified that in his opinion the conversations " are in relation to wagers on mutual race horse policy."

Defendant called no witnesses and did not testify in his own behalf but moved to dismiss the complaint on the ground that the People failed to establish a violation of section 986 of the Penal Law with which the defendant had been charged. The court denied the motion and found the defendant guilty.

When defendant was arraigned for sentence, the record shows that it was upon a charge of book-making (violation of Penal Law, § 986). Indeed, at no time during the course of the trial or when sentence was pronounced, was the claim made that the conviction was for any crime other than that of book-making.

Section 986 of the Penal Law contains broad language and is directed against the professional gambler who conducts a business of pool selling, book-making, and registering of bets upon the result of any trial or contest of skill, of man or beast, or upon the result of any contingent event whatsoever. (*People* v. *Goldstein,* 295 N. Y. 61.) However, upon this appeal, the People take the position that defendant was adjudged guilty of the crime of violation of section 974 of the Penal Law. The People urge that the complaint, though inexpertly drawn by a clerk in the Magistrates' Court, clearly set forth facts which " spell out the crime of policy and not bookmaking." It is suggested that the complaint " incorrectly referred to Section 986 of the Penal Law and to Bookmaking " since the crime really charged was not book-making but policy. It may well be that defendant was engaged in furtherance of the game of policy but upon the evidence adduced we are unable to conclude that a violation of section 974 of the Penal Law was established. Moreover, if, as the People contend, that were the charge, the information should specifically name that crime and the acts constituting it. In *People* v. *Lyttle* (225 App. Div. 299, affd. 251 N. Y. 347) which involved a prosecution for furtherance of the game of policy, this court warned that a due regard should be given to sections 974, 986 and 1374–1386 (lottery) of the Penal Law in filing the appropriate information. To the same effect see *People* v. *Edelstein* (231 App. Div. 459, 461, affd. 256 N. Y. 660).

Section 974 relates only to the game of policy or numbers and reaches both the operator and the player (*People* v. *Marra,* 262 App. Div. 1039). Section 986 is intended to embrace not the casual bettor but only the professional gambler who conducts a systematic business of pool selling or book-making

(*Bamman* v. *Erickson,* 288 N. Y. 133; *People* v. *Goldstein,* 295 N. Y. 61, *supra*). In *People* v. *Wilkins* (278 App. Div. 562) an information was filed in the Court of Special Sessions, containing two counts, the first of which charged a violation of section 986 of the Penal Law, in that the defendant was engaged in book-making (that is, recording bets upon the result of a trial or contest of skill), and in a second count it was alleged that defendant had violated section 974 of the Penal Law in unlawfully receiving money in playing policy. Though the Court of Special Sessions adjudged the defendant guilty of both crimes, this court reversed as to the book-making count and affirmed only as to the policy count.

The crime of policy playing is aptly described in *People* v. *Wolosky* (296 N. Y. 236, 238) as follows (DESMOND, J.) : " Section 974 of the Penal Law contains a single, long, involved sentence, the meaning of which was simply stated in *People* v. *Hines* (284 N. Y. 93, 104, 105) as follows : ' Section 974 prohibits one from keeping an establishment for policy playing, from delivering or receiving money by playing policy, or possessing policy slips, or other articles used in carrying on policy, or owning or being the agent or janitor of any establishment where lottery policies are sold.' Thus, four kinds of activities having to do with policy are forbidden : maintaining a place wherein to play it, having ownership or control of such a place, handling the money involved, or possessing papers, writings or articles commonly used in carrying on this form of gambling." Proof properly adduced in this case might well bring the acts of defendant within one or all of the first three types of activities so forbidden.

To establish a violation of section 974 there should have been proof that bets or wagers were made upon the drawing or selection of numbers. If, as suggested, " mutual race horse policy " may be some sort of a scheme where wagers are made on the result of a contingent event which would make the one betting on a certain number or digit a winner, the police officer, as a qualified expert in gambling cases, should explain the meaning of the wagers made, and the system of policy playing employed here in determining whether the player wins or loses. *People* v. *Hines* (284 N. Y. 93, 101) gives an illuminating illustration of the game of policy or numbers as conducted in that case (cf., also, *People* v. *Edelstein,* 231 App. Div. 459, 460, *supra*).

*Forte* v. *United States* (83 F. 2d 612, 615) which concerned a conviction for the sale and possession of lottery tickets, points up the distinction between policy and other forms of betting

as follows: " The first contention of counsel for appellant is that the numbers game is a direct bet or wager on horse races. This contention has been generally rejected by the courts. Commonwealth v. Wright, 137 Mass. 250, 50 Am. Dec. 306; Wilkinson v. Gill, 74 N. Y. 63, 67, 30 Am. Rep. 264; Commonwealth v. Banks, supra [98 Pa. Superior Ct. 432]. The results of the horse races are employed merely to determine the winning number, it being entirely immaterial to the player of the numbers game which horses win. The player merely guesses that the result of mathematical calculations, based upon the prices paid at a certain track, will be a certain number."

In this type of case, the courts should be advised not only of the facts upon which an expert bases his conclusions but also an explanation of those facts in order to determine whether or not such conclusions are well founded. If such facts are not declared there is no basis upon which the conclusions of the expert can be contested or questioned (*People* v. *Samuels,* 302 N. Y. 163, 172 [opinion FROESSEL, J.]; *People* v. *Strait,* 148 N. Y. 566).

Apart from the confusion which existed as to which section of the Penal Law had allegedly been violated, it was requisite that the conversations overheard and the conclusion reached by the officer should have been explained with sufficient clarity to enable the trial court and a reviewing court as well to determine whether or not defendant if guilty, was guilty of the crime of handling money wagered on policy.

An amended information may properly be filed, charging the particular section or sections of the law claimed by the People to have been violated by defendant. With the correct formulation of the charge, which defendant should have an ample opportunity to meet, it will then devolve upon the prosecution to have its expert witness upon another trial testify not only to conversations that he overheard and to acts of the defendant and perhaps others, but he will also be required to explain his conclusion as to whether, as now asserted by the People, the wagering was being conducted in furtherance of the game of policy.

For the foregoing reasons, the judgment of conviction must be reversed, the fine should be remitted, and a new trial ordered.

CALLAHAN, J. (dissenting). The information charged that what defendant did was in violation of section 986 of the Penal Law, and that he was unlawfully engaged in book-making and receiving bets on the result of contingent events, to wit, the

results of two designated forms of policy. The facts specified in support of the charge show, however, the receipt of various sums of money as wagers on the drawing of numbers, which would seem to be a violation of both sections 974 and 986 of the Penal Law. Section 974 makes it a misdemeanor to receive any money in playing policy. Section 986, in addition to forbidding book-making and pool selling (which are not involved here), also makes it a misdemeanor to receive money bet or wagered by or for any other person (*People* v. *Corbalis,* 178 N. Y. 516, 521; *People* v. *Goldstein,* 295 N. Y. 61).

But assuming that the facts alleged as constituting the crime showed only a violation of section 974 or were more particularly proscribed by that section, and that the information was as incorrect in charging a violation of section 986 as it was in denominating the offense " bookmaking ", such errors would not be fatal. Under the circumstances, the specific facts alleged should control and show the crime for which the conviction was had. The crime designated in the accusatory or charging clause, insofar as it alleged " bookmaking " or stated that the offense was a violation of section 986 of the Penal Law, involved a mere misnomer (*People* v. *Miller,* 143 App. Div. 251, affd. 202 N. Y. 618; *People* v. *Valentine,* 147 App. Div. 31, affd. 205 N. Y. 556).

The evidence of the police officer, qualified as an expert, was to the effect that the conversations had in connection with the delivery of the moneys were in relation to wagers on mutual race horse policy. While this opinion stated the alleged ultimate nature of the transactions and did not explain the reasons for so designating them, it would seem to me to be sufficient, together with the other evidence, to support a finding that policy betting was involved. There was no cross-examination as to the basis of the opinion and no contradictory evidence offered. I vote to affirm.

DORE, J. P., and VAN VOORHIS, J., concur with COHN, J.; CALLAHAN, J., dissents in opinion in which SHIENTAG, J., concurs.

Judgment reversed, the fine remitted and a new trial ordered.