Foster, J.
The People appeal by permission from an order of the Appellate Division, First Department, which reversed upon the law, without considering the facts, a judgment of the Court of Special Sessions of the City of New York convicting the defendant Crossland, after a trial without a jury, of the crimes of knowingly possessing policy writings, knowingly possessing articles commonly used in the game of policy, and receiving money in the game of policy, and ordered a new trial.
The information contained three counts as indicated above. At the trial, the People produced one witness, Patrolman Juan Carrion, of the New York City Police Department. He testified that from a telephone booth in a drugstore at 3181 Broadway, at about 11:15 a.m., on August 12, 1959, he saw one Davis hand Crossland a white slip of paper and money in the form of *466 a bill. Crossland received the money and placed it in his pocket. Patrolman Carrion then came out from the phone booth and approached the defendants, whereupon Davis removed the slip from the person of Crossland, and threw it into a nearby bucket of water. The patrolman retrieved the paper from the bucket, and it separated into three parts. The pieces of paper comprising the slip were introduced into evidence. Defense counsel stipulated to the witness’ qualifications as an expert on policy, and Carrion then testified that in his opinion the writing on the slip of paper represented 17 “ plays ” on mutuel race horse policy.- Defendant Davis testified in his own behalf and denied any wrongdoing.
The issue before us is whether or not a police officer, testifying as an expert in a prosecution for possession of policy slips (Penal Law, §§ 974, 975), must explain, as part of the People’s ease, the technical basis of his opinion that the papers in question are in fact policy slips and the mode of operation of the particular policy game. The Appellate Division, citing People v. Pierson (279 App. Div. 509); People v. Oak (283 App. Div. 1018), and People v. Harris (1 A D 2d 821), has held that such an explanation is a sine qua non of the People’s case, and has reversed the conviction.
The cases cited unquestionably tend to support the decision below, but we think those cases were decided improperly and the doctrine they espouse should be rejected.
In both the Pierson and Oak cases, a police officer, having qualified as an expert, testified as to conversations he had heard involving the defendants, and then stated that in his opinion they related to policy wagers. The Appellate Division, in reversing the convictions in both cases, cited People v. Samuels (302 N. Y. 163) and People v. Strait (148 N. Y. 566) for the proposition that: “In this type of case, the courts should be advised not only of the facts upon which an expert bases his conclusions, but also an explanation of those facts in order to determine whether or not such conclusions are well founded. If such facts are not declared there is no basis upon which the conclusions of the expert can be * * * questioned” (People v. Oak, supra, p. 1018; People v. Pierson, supra, p. 513).
In those situations, however, the rule of Samuels and Strait was improperly extended beyond its original scope and mean *467 ing. Samuels and Strait merely reaffirmed the principle that an opinion of an expert must be based upon facts which are produced in evidence before the jury (People v. Strait, 148 N. Y. 566, 570, supra; People v. Samuels, 302 N. Y. 163; 171-172, supra). Indeed, in the Strait case, we specifically held that an opinion as to the defendant’s sanity was inadmissible, when based “ ‘ upon the story told by the defendant himself which is not here in evidence. ’ ” We remarked that “ The witness was an expert on the diseases of the mind, but he was not an expert on determining the facts, where such facts had to be obtained from the statements of others ” (supra, p. 570).
And in People v. Samuels (supra, opinion per Fboessel, J.) we held that an expert opinion as to the sanity of the defendant was improperly received, when based upon a hypothetical question containing facts which were not properly in evidence before the jury. There, various of the documents which provided the basis of the hypothétical question were not legitimate parts of the hospital record and ‘ ‘ should in no event have been admitted as part of the hospital record they were not made in “ the regular course ” of the hospital’s business (302 N. Y. 163, 171).
In the instant case, however, the very document upon which the opinion was based was in evidence before the court. The expert testified that in his opinion it represented 17 “plays ” of “mutuel race horse policy”. The facts upon which the opinion was based inhered in the object in evidence.
On cross-examination, defense counsel might have probed the technical basis of the expert’s opinion. He might have inquired into the operation of “mutuel race horse policy”, the method of wagering, and the method of determining the winning number. This he did not do. “ The data on which an expert rests his specific opinion (as distinguished from the facts which make him skillful to form one at all) may of course he fully inquired into upon cross-examination(3 Wigmore, Evidence [3d ed.], § 992, and cases cited therein; emphasis supplied.)
It is true that the technical basis of the opinion might have been inquired into on direct examination (2 Wigmore, Evidence, § 665; Venuto v. Lizzo, 148 App. Div. 164; Johnson Serv. Co. v. Maclernon, 142 App. Div. 677), but such inquiry was, not an essential part of the People’s case.
*468 There is little merit to the argument that the requirement of the Pierson and Oak cases {supra) is necessary to familiarize the courts with the nature of policy play, for the courts today generally are familiar with the operation of the “numbers rackets ” and, in most instances, the intricacies are explained upon cross-examination of the expert by defense counsel. What we have said here applies equally to the cases of People v. Brod (9 N Y 2d 842) and People v. Colon (9 N Y 2d 842) decided herewith, and dictates an affirmance of the judgment of conviction in those cases.
Accordingly, the order appealed from should be reversed and the matter remitted to the Appellate Division for its determination on the facts (Code Grim. Pro., §§ 543-a, 543-b).
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order reversed, etc.