## THE PEOPLE v. WILLIAM O. ELLIOTT

*Criminal law—Lotteries—" Playing policy."*

1. A lottery is a scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished

2. Upon the facts stated in the opinion, the respondent is held guilty of setting up and promoting a lottery for money, contrary to How. Stat. § 9331.

Exceptions from recorder's court of Detroit. (Swift, J.) Argued January 29, 1889. Decided February 20, 1889.

Information for promoting a lottery. Conviction affirmed. The facts are stated in the opinion.

*G. X. M. Collier,* for respondent.

*S. V. R. Trowbridge,* Attorney General, and *George F. Robison,* Prosecuting Attorney, for the people.

SHERWOOD, C. J. The respondent was convicted in the recorder's court in the city of Detroit, upon an information charging him with setting up and promoting a lottery for money. The information against him is filed under section 9331, How. Stat., and is as follows:

"THE RECORDER'S COURT OF THE CITY OF DETROIT:

"In the name of the people of the State of Michigan, George F. Robison, prosecuting attorney in and for the said county of Wayne, who prosecutes for and on behalf of the people of said State in said court, comes now here in said court, in the July term thereof, A. D. 1888, and gives the said court here to understand and be informed that William O. Elliott and Frank F. Johannes, late of said city of Detroit, heretofore, to wit, on June 2, A. D. 1888, at the said city of Detroit, in the county aforesaid, unlawfully did set up and promote a lottery for money, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

"GEORGE F. ROBISON,
"Prosecuting Attorney."

Respondent pleaded not guilty. Upon the trial, the people gave evidence tending to show that the respondent kept an office in Detroit on June 2, 1888, where he acted as a policy dealer; that the business he carried on was called "policy," and was conducted by him as follows: There is in Kentucky a lottery, in which every day there are 13 numbers drawn by lot out of 78. These numbers are drawn to determine the right to prizes in the Kentucky lottery, in which the prizes range in value from $80 to $4,000. When the numbers drawn in Kentucky

are made public, they are telegraphed to the respondent at Detroit, who uses them as a basis for his dealing. Persons who wish to play "policy," as he calls it, pay the respondent a sum of money, usually from five to fifty cents, and at the same time select two, three, or four numbers, from one to seventy-eight. If the player selects two numbers it is called a "saddle." If he selects three it is called a "gig." If he selects four it is called a "horse." If all the numbers selected by the player came out in the drawing, he won a certain amount from the policy dealer. In the case of a "gig," or three numbers, if the player won, he received ten dollars for five cents; in the case of a "saddle" the odds were proportionately less; in the case of a "horse," proportionately greater.

The respondent requested the court to instruct the jury as follows:

"1. If the jury find that the facts in this case do not show that the defendant, William Elliott, did any act to promote within this State any lottery or gift enterprise for money, or in any way was concerned in the setting up, managing, or drawing of any such lottery or gift enterprise, or did in any house, shop, or building owned or occupied by him, or under his control, knowingly permit the setting up, managing, or drawing of any such lottery or gift enterprise, or the sale of any lottery ticket, or share of a ticket, or other device purporting or intending to entitle the holder or bearer to any prize or gift or interest in any prize or gift to be drawn in any such lottery or gift enterprise, then their verdict must be of not guilty.

"2. If the jury shall find as a matter of fact that the defendant, William Elliott, committed no act which tended towards maintaining or promoting the business of a lottery or gift enterprise for money or disposing of money in the State of Michigan, their verdict must be not guilty.

"3. The evidence in this case shows that William Elliott, the defendant, did maintain and take part in a

game called 'policy,' which consisted in betting that certain numbers drawn out of the lottery wheel in foreign states would be the winning numbers, and that he was in no wise connected with the maintaining or promoting of those lotteries in said foreign states, and that said lottery enterprises or schemes were not maintained or promoted by said defendant, in this State or in any other state; and while he may be guilty of keeping an unlawful place for gambling, he is not guilty of the offense charged in the information in this case, and therefore I charge you to find a verdict of not guilty.

"4. A lottery is a scheme whereby large numbers of persons are enticed into the purchasing of tickets for the distribution of prizes, in money or property, upon some sort of drawing or allotment by chance, and the lotteries generally involve large sums of money, or large prizes of some kind, and circulate their tickets in large numbers, and in all parts of the country; such tickets being written or printed, or some equivalent device, securing shares in a distribution of prizes. Now, the evidence in this case does not show that the defendant, William Elliott, committed any act which tends towards maintaining or promoting business of a lottery or gift enterprise for money, or disposing of money or property, and thereby your verdict must be not guilty."

The court refused to give these instructions, and respondent's counsel excepted; but did charge the jury, if they were satisfied beyond a reasonable doubt of the truth of the testimony given by the prosecution they would be warranted in finding the respondent guilty. The court was justified in refusing to give the respondent's requests, and we see nothing improper in the instruction given. The testimony, which was very brief, was not controverted, and the facts make out a case under the statute.

A lottery is a scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or deter-

mine such result until the same has been accomplished. It was the obtaining of money or property by such means that our statute was intended to prevent and punish, and I think the case before us falls clearly within the statute. If the respondent had drawn the 13 numbers from the 78 at his place of business in Detroit, there could be no doubt but that the scheme would have been regarded *as a lottery, and within the terms of the statute. It is difficult to see why the selecting and selling of three or more of the thirteen numbers would not be equally within the statute, if they were to draw the prizes, if it was not necessary for the drawing to be done within the State to constitute the offense; and this I think was unnecessary. How. Stat. § 9335. It is not the drawing of the lots, but the disposing and selling of the chances, that brings the case within the statute. It is promoting the lottery for money by paying the money for the chance of receiving more. It is of little consequence where the drawing takes place. These views, to some extent, will be found supported in the following authorities: *Com. v. Sullivan,* 146 Mass. 142 (15 N. E. Rep. 491); *Com. v. Wright,* 137 Id. 250; *Wilkinson v. Gill,* 74 N. Y. 63; *State v. Lovell,* 39 N. J. Law, 458; *Com. v. Thacher,* 97 Mass. 583; *State v. Clarke,* 33 N. H. 329, 335; *Hull v. Ruggles,* 56 N. Y. 424, 427; *Randle v. State,* 42 Tex. 580; *Smith v. State,* 68 Md. 168 (11 Atl. Rep. 758).

It is thought by counsel for defendant that this case is ruled by *People v. Reilly,* 50 Mich. 384 (15 N. W. Rep. 520). That case, however, is different. There the contingency was one upon which the parties interested could exercise their reason and judgment under an agreement upon which the money was paid, and was in its nature executory. In this case the money was paid when the chance was obtained, and there was no opportunity for

exercising the reason or judgment or any other faculty of the mind, and hence the lottery.

The judgment must be affirmed.

The other Justices concurred