STATE *vs.* HARRY SEDGWICK.

1.  LOTTERIES—ELEMENTS OF OFFENSE—STATUTES.

*Rev. Code* 1852, amended to 1893, *p.* 396 (12 *Del. Laws, c.* 33), provides that if any person shall sell or dispose of any lottery policy, certificate, or of anything by which such person or any number of persons promises or guarantees that any particular number, character, ticket, or certificate shall, in an event or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of

debt, every person so offending shall on conviction be subject to a penalty. *Held*, that the fact that tickets representing membership in a baseball pool did not in themselves show a promise or guaranty that on the happening of an event, the holder should be entitled to money, did not save the scheme from being a violation of the statute, since the term "lottery", as used therein, includes any scheme for the distribution of money or prizes by chance, not limited to a sale of tickets nor to the terms or promises printed or written upon them.

2. Lotteries—Scheme—Proof.

Where a lottery scheme involved more than appeared on tickets issued in the conduct thereof, its character and extent could be shown by any proper testimony.

3. Lotteries—Contingency—Chance.

Where a baseball pool involved a double hazard of selection of a combination of numbers designated by a drawing to be representative of certain baseball clubs, the winnings on which were determined by the baseball score, the prize being given, not to him who might forecast the results of the games either in victories or runs, but to him who selected and paid for combinations of numbers, each representing a club, not selected by, but designated for, him, the total numbers of which approached nearest the highest total of runs made in a given time by a like number of clubs, the payment of the prizes depended on the happening of a contingency in the nature of a lottery, and was prohibited by *Rev. Code* 1852, amended to 1893, *p.* 396 (12 *Del. Laws, c.* 33).

(*September* 21, 1911.)

Judges Conrad and Woolley sitting.

*Josiah O. Wolcott*, Deputy Attorney General, for the State. *James Saulsbury* and *Philip L. Garrett* for the defendant.

Court of General Sessions, New Castle County, September Term, 1911.

Indictment for Engaging in a Lottery.

The prisoner was indicted for a violation of the statute against lotteries and was charged with the particular offense of conducting a baseball pool, the plan of which was as follows:

On or before Saturday of one week, a person who desired to take a chance in the play of the next week, paid the prisoner thirty cents, and in return received from him a ticket upon which were printed the names of the baseball clubs of the National and American Leagues and of the American Association. Before the name of each club there was a blank space in which a number might thereafter be written. Upon the payment of the money

and the delivery of the ticket on Saturday, the purchaser selected and gave to the prisoner six numbers, each denoting a club, then unknown alike to him and to the prisoner. On Monday, a number was given to each club, the numbers for all the clubs being determined by a drawing, the result of which was on that day announced to all purchasers of tickets who composed the membership of the pool. They then knew for the first time what six clubs they had selected when on the previous Saturday they bought their tickets and gave in their numbers.

The days of the week were shown by names upon the tickets and were arranged transversely to the names of the clubs so that the number of runs made by any club on any day might be entered in a blank opposite the name of the club and below the name of the day, and upon the margin of the tickets were blanks in which the total number of runs made by each club might be entered, and also a blank in which might be entered the grand total of runs made during the week by the six clubs selected in the manner stated. Upon the back of each ticket when purchased from the prisoner were stamped the winnings for the previous week and the amount of prizes to be paid at the conclusion of the ball games of the ensuing week, there being nothing further upon the tickets that indicated promises of payment of money or the manner of winning prizes. It appeared by the evidence that the first prize was paid to the holder of a ticket who had selected by numbers, at the time and in the manner stated, a combination of six clubs, that together made a number of runs the aggregate of which approached nearest the total number of runs of those six clubs, which at the end of the week were shown by the scores to have made the highest total of any six clubs named on the tickets. The other prizes were graduated in somewhat the same manner.

WOOLLEY, J., delivering the opinion of the court:

We assume, for the present motion, that the law under which this indictment was found is that which appears on *page* 396 of the *Revised Code*, being *Chapter* 33, *Volume* 12, of the *Laws of Delaware*, and which in part reads as follows:

"If any person shall * * * sell or dispose of, * * *

any lottery policy, certificate, or anything by which such person or any other person promises or guarantees that any particular number, character, ticket, or certificate, shall in the event, or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of debt, * * * every person so offending shall, upon conviction," be subject to a certain penalty.

Counsel for the prisoner have moved the court that the jury be instructed to return a verdict of not guilty, upon two grounds; which, as we understand them, are as follows:

[1] First, that the tickets sold by the prisoner, do not in themselves show a promise or guarantee by him that upon the happening of an event the holder shall be entitled to money.

[2] Lottery is a scheme for the distribution of money or prizes by chance. That scheme is not limited to the sale of tickets nor to the terms or promises printed or written upon them. Being a scheme, involving more than appears upon the tickets, its character and extent may be shown by any proper testimony.

Entertaining that view, we have ruled in certain evidence, and for the same reason we decline to grant the motion upon the first ground.

[3] The second ground of the motion is that the "contingency" which determines the winning of a prize in this particular scheme is the aggregate number of runs made by a certain number of baseball clubs, which being the result of skill and not of chance, is not "a contingency in the nature of a lottery."

The "happening of a contingency in the nature of a lottery," as contemplated by the statute and applied to the particular facts of this case, is not the number of the runs made by different baseball clubs, which uncertainty may or may not be a matter of chance within the meaning of the law, but the contingency here, into which enters the element of chance and which partakes of the nature of a lottery, is the double hazard of the selection of a combination of numbers which are designated by a drawing to be representative of certain clubs, the winnings upon which are determined by baseball scores. The prize is given not to him who may forecast the results of the games, either in victories or in runs

Statement.

but to him who selects and pays for a combination of numbers each representing a club not selected by but designated for him, the total runs of which approach nearest the highest total of runs made in a given time by a like number of clubs.

There is but one highest total of runs made by six clubs regardless of the number of runs made and that highest number of runs is the factor that determines who wins on the combinations of numbers selected by the members of the pool. As a method of determining the winner of all who participated in the game, it has no advantage over nor is it essentially different from the ordinary method of having a little girl or a man of position draw the decisive or determining number from a hat. We are of opinion that the scheme disclosed by the evidence constitutes a lottery within the meaning of the law and therefore decline to grant the motion that the jury be instructed to acquit the prisoner.

The defendant thereupon entered a plea of guilty and was paroled upon his own recognizance.