**76 P.2d 1149**

**STATE v. BUTLER.**

**No. 4346.**

Supreme Court of New Mexico.

Feb. 18, 1938.

Wilson & Remley, of Albuquerque, for appellant.

Frank H. Patton, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for the State.

HUDSPETH, Chief Justice.

A. O. Butler appeals from the judgment of conviction of the charge of having lottery tickets in his possession in violation of N.M.1929 Comp.St.Anno., § 35-3804, which reads as follows: "Whoever shall write, print, vend, or have in possession with intent for himself or another, to sell or offer to sell, negotiate, exchange or dispose of any ticket, share of a ticket, or any writing, certificate, token or device, purporting or intending to entitle the holder, bearer or any other person, to any prize, or any share of or interest in any prize, to be drawn in any lottery, in or out of this state, shall be fined for every such offense not less than one hundred dollars nor more than one thousand dollars."

The first point argued is that the information does not charge the defendant with the commission of a crime. The material part of the information states: " * * * Now gives the Court to understand and be informed: That A. O. Butler late of the County of Bernalillo,

in the State of New Mexico, now in this form here held to answer for the crime charged herein, to-wit: Having in his possession lottery tickets for the purpose of vending the same contrary to the form of the Statute. * * * "

Apparently the verb was inadvertently omitted. On motion of defendant a bill of particulars was furnished to him, which states:

"That the lottery tickets alleged in the information to have been in the possession of the defendant are substantially in the form of one of the tickets which is in the form as follows:

| 1-16 | 9254 | Z | Werts Nov. Inc. Muncie, Ind. | Sub. Col. Ass<br>109-Chi A<br>114-Phi A<br><br>Sub. K. C.Ass. | 88 | 9254 Z |

that there are One Hundred Twenty (120) of said tickets. * * * "

Trial court rule No. 35-4442 (1) reads as follows: "Defects, variance and amendment. (1) No indictment or information that charges an offense in accordance with the provisions of section 35-4408 shall be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling or improper English, or because of the use of sign, symbol, figure or abbreviation, or because of any similar defect, imperfection or omission. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such defect, imperfection or omission."

Rule 35-4442 (4) provides: "No appeal, or motion made after verdict, based on any such defect, imperfection, omission or variance shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced in his defense upon the merits."

The defendant was fairly apprised of the crime charged against him and it is not shown that he was in any way prejudiced in presenting his defense upon the merits.

The facts in this case are not in dispute. The defendant admitted having the tickets in his possession and for sale at wholesale or in dozen-book lots. He stated that he supplied the pool halls where the tickets were sold at retail. He insisted that he had no part in the retail business. The tickets were sealed so the purchaser could not tell on what ball team he was hazarding his money. He exercised no judgment in selecting his ticket. It was a pure game of chance. The defendant knew the purpose for which the tickets were bought. He explained in detail to the officers the manner in which they were used. The witness Santos Garcia testified as follows:

"Mr. Marron: You have stated, Mr. Garcia, that Mr. Butler explained to you the manner in which these tickets contained in State's Exhibit No. 2 are sold and used? A. Yes.

"Q. Did he use a book of tickets similar to State's Exhibit 2 in explaining the purpose of the tickets? A. I am not sure, but I think it is the same book I have now. He opened it and said there were 120 tickets in each book; that each ticket cost the buyer 10¢, and the pot was divided, $9.00 to the man holding the lucky number with the two teams making the high score that day, and the balance to the man selling the ticket."

The next point argued is that the books described in the information found in the defendant's possession are not of the class or character of tickets the possession of which is denounced by the statute. The defendant points out that the section of the statute quoted above was enacted in the year 1889 and maintains that this act was aimed at lotteries of the class of the Louisiana Lottery; that "baseball" as played by the use of the tickets in the case at bar was not then known; that since that time other anti-gambling legislation has been enacted applicable to the petty gambling games played with these tickets. These later acts are referred to in Territory v. Jones, 14 N.M. 579, 99 P. 338, 20 L.R.A.,N.S., 239, 20 Ann.Cas. 128; Grafe v. Delgado, Sheriff, 30 N.M. 150, 228 P. 601; State v. Apodaca, 32 N.M. 80, 251 P. 389. N. M.1929 Comp.St.Anno., § 58-202, penalizes the furnishing of any gambling device with knowledge that it is to be used in the operation of any of the games listed in the statute. Section 58-208 provides for the taking possession of any gambling paraphernalia, device, or equipment by peace officers, and the following section provides for its destruction by order of the district court after hearing. The later legislation did not repeal the lottery statute under which this prosecution was brought, nor did the acts referred to specifically mention lotteries or "baseball." The proposition that this particular game was not known at the time of the enactment of the statute has been considered by other courts and seems without merit. In Forte v. United States, 65 App.D. C. 355, 83 F.2d 612, 615, 105 A.L.R. 303, the court said:

"One of the essential elements of a lottery is the awarding of a prize by chance, but the exact method adopted for the application of chance to the distribution of prizes is immaterial. People v. Elliott, 74 Mich. 264, 41 N.W. 916, 3 L.R.A. 403, 16 Am.St.Rep. 640; 38 C.J. pp. 289, 290, § 3. Any reasonable interpretation of the statute indicates that it is the prize and not the ticket which is to be drawn. The language of the statute is 'any ticket * * * or other device purporting or intended to guarantee or assure to any person, or entitle him to a chance of drawing or obtaining a prize, to be drawn in any lottery, or in the game or device commonly known as policy lottery or policy.' (D.C. Code 1929, T. 6, § 151.)

"In our opinion the 'numbers game' is a lottery.

"Appellant's contention that the prohibition of the statute is limited to the so-

called 'policy game' cannot be sustained. We think that section 863, which is captioned 'Lotteries,' is broad enough in its scope to prohibit the sale, transfer, or possession of any ticket intended to assure a chance of obtaining a prize 'to be drawn in any lottery.' While it may have been the intent of the Congress chiefly to suppress the policy game, which was prevalent at the time of the enactment of this statute, there is nothing to indicate that the prohibition is limited to this one type of lottery. On the contrary, the statute covers broadly any form of lottery.

"A similar contention was made in the case of Commonwealth v. Banks, supra, wherein the defendant was prosecuted, under a state law prohibiting lotteries generally, for operating the 'numbers game.' In the course of its opinion the court said (98 Pa.Super. 432, at pages 433, 434): 'He argues that as the Act of February 17, 1762 (1 Sm.L. 246), forbade "lotteries" in much the same terms as the Act of 1860, the term must be limited to such forms of lottery as were then known and legislated against and cannot be applied to a scheme not then in existence. Practically the same contention was made as long ago as 1818 and decided adversely to the appellant. In Seidenbender v. Charles' Adm'rs, 4 Serg. & R. 151, [8 Am. Dec. 682], Judge Gibson said on this point: "I grant the legislature may not have had this particular kind of lottery in view, but was it intended to restrain the operation (of the Act of 1762) to those particular kinds of lotteries then in use, and to those only? I apprehend not. It is very clear that a particular kind of mischief, differing not in form or substance, but in degree only from the one under consideration, and only less pernicious in its consequences, first induced the legislature to act on the subject. Shall the letter, which is sufficiently comprehensive to embrace this case, be restrained to the particular mischief then existing, and exclude one of the very same stamp, merely because it was not then practiced? This surely would not be a sound construction. * * * We are bound to extend it to every case within the letter, which we can suppose would, if foreseen, have been specially provided for." ' "

The defendant strenuously argues that the ticket upon its face must purport or intend to entitle the holder to a prize or share of a prize to be drawn, and that a lottery was to be held or conducted. It is admitted, of course, that the tickets involved in this case did not convey to · the uninitiated any of the information which defendant insists the ticket must convey. However, the weight of authority is against the contention of the defendant. The case of Bueno v. State, 40 Fla. 160, 23 So. 862, 864, says: "These tickets bore on their face no contract or agreement with the purchaser, nor other evidence that the purchaser was to receive a prize at any drawing, nor did the defendant make any agreement or contract with the purchaser at the time of the sale. The tickets were plain pieces of paper, bearing no marks except a number

and a stamp placed upon them by the defendant, and they were stamped and sold in silence. If the number borne by this ticket corresponded with another drawn at a subsequent 'bolito' drawing conducted by the defendant, he immediately paid to the ticket holder $4.50; otherwise the latter received nothing. This evidence was sufficient to stamp the ticket with the nature and character of a lottery ticket, notwithstanding there was no contract upon the face of the ticket, and defendant made none with the purchaser at the time of the sale."

In the case of State v. Ochsner, 9 Mo. App. 216, the court said: "It is objected, further, that the paper does not on its face purport to be a lottery ticket, or, as the court instructed, 'a writing purporting to give the holder a sum of money or property in the event of the happening of the contingencies named on the ticket.' We think that the instruction on this point, although given at the State's instance, yielded too much to the defence. Legislation against the sale of lottery tickets would be all in vain if the ticket in every instance must express on its face, with the distinctness of a promissory note or bond, the obligation to the purchaser assumed by the seller or those whom he represents. It would be easy to adopt a symbol or symbols wholly without meaning except as understood by agreement between the parties, or as arbitrarily assumed by the lottery-keeper and blindly trusted in by the purchaser, for an assurance of the prize which may fall to its number. Such, in fact, appears to have been the sort of evasion attempted in the present case. The paper in testimony contained nothing intelligible except the words 'Missouri State Lottery,' and some directions about seeing that the numbers were properly entered on the register; yet all the testimony tended to show that the witness bought it, and the defendant sold it, as a lottery ticket. The place kept by the defendant, where it was sold, was described as a 'lottery office.' Each witness declared that it was in fact a lottery ticket. One testified that he had frequently purchased similar papers, and had seen them bought from the defendant by other persons, and, in effect, that the transaction always implied a lottery venture. The only difference, if any, between the tickets was in the distinctive numbers placed upon each at the time of the sale. All this testimony is objected to as incompetent and inadmissible; but it has the sanction of both principle and authority. While there may be no direct evidence of a contract between the parties, whereby the buyer was guaranteed a prize on the happening of a certain contingency, yet the whole drift of the testimony shows that such was the understanding and intent of both buyer and seller."

The syllabus in State v. Sedgwick, 2 Boyce, Del., 453, 81 A. 472, is as follows: "1. Rev.Code 1852, amended to 1893, p. 396 (12 Del.Laws, c. 33), provides that if any person shall sell or dispose of any lottery policy, certificate, or of anything

by which such person or any number of persons promises or guarantees that any particular number, character, ticket, or certificate shall, in an event or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of debt, every person so offending shall on conviction be subject to a penalty. Held, that the fact that tickets representing membership in a baseball pool did not in themselves show a promise or guaranty that on the happening of an event, the holder should be entitled to money, did not save the scheme from being a violation of the statute, since the term 'lottery,' as used therein, includes any scheme for the distribution of money or prizes by chance, not limited to a sale of tickets nor to the terms or promises printed or written upon them." See, also, United States v. McGuire et al., 2 Cir., 64 F. 2d 485, certiorari denied 290 U.S. 645, 54 S.Ct. 63, 70, 78 L.Ed. 560; State v. Wolford, 151 Minn. 59, 185 N.W. 1017; State v. Willis, Jr., 78 Me. 70, 2 A. 848; Clark v. State, 47 N.J.L. 556, 18 Vroom 556, 4 A. 327; State v. Rothschild, 19 Mo.App. 137; Commonwealth v. Banks, 98 Pa.Super. 432; Rosenberg v. Commonwealth, 165 Va. 739, 181 S.E. 368; State v. McCarthy, 124 Kan. 20, 257 P. 925.

The defendant appears to gain some comfort from an expression used by us in the case of City of Roswell v. Jones, 41 N.M. 258, 67 P.2d 286, 289, where we said: "The mere finding of the three elements necessary to constitute a lottery, to wit, prize, chance, and consideration is not sufficient."

It is often said that the gravaman of the offense of conducting a lottery lies not in the wrongful intent of the sponsors, but in the baneful effect upon the public. This is true as a general proposition, but the last section of our lottery statute (1929 Comp.St.Anno., § 35-3808) reads as follows: "The provisions of the five preceding sections shall be construed to apply to every device or devices and only to such device or devices as are commonly called or known as lottery, although designated or called by any other name, but shall not be construed to apply to any sale or drawing of any prize at any fair held in this state for the benefit of any church, public library or religious society, situate or being in this state, or for charitable purposes, when all the proceeds of such fair shall be expended in this state for the benefit of such church, public library, religious society, or charitable purposes."

The defendant does not come within the exception. The game of baseball is clearly denounced by the statute and the definition of a lottery quoted in City of Roswell v. Jones, supra, "a game of hazard in which small sums of money are ventured for the chance of obtaining a larger value in money or other articles." Such lotteries were denounced by the Supreme Court of the United States in the year 1850 in the following language: "The sup-

278

pression of nuisances injurious to public health or morality is among the most important duties of government. Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community: it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple." Phalen v. Commonwealth of Virginia, 8 How. 163, 168, 12 L.Ed. 1030.

■ The third point relied upon by defendant for reversal is that there is no substantial evidence to support the verdict that the defendant's possession of the ticket was with the unlawful intent denounced by the statute. The defendant was convicted mainly on his frank statement made to the officers who went to his store and inquired about the tickets and the manner in which they were used. He fully understood the uses to which the tickets were put by his customers. His denial only went to the participation in the conduct of the lottery. The defendant argues that the intent in the mind of the person possessing a ticket must be an intent to himself engage in the promotion of a lottery. Defendant's learned counsel requested instructions embodying this theory and excepted to the court's instruction on this point. If the contention of the defendant as to intent is sound the case must be reversed since there is no evidence which

justifies a finding that the defendant was engaged in the promotion of a lottery other than in selling the device used in the conduct of the lottery at wholesale. Does one who knowingly supplies tickets to others who use them in the conduct of a lottery violate this statute? The act is comprehensive. It seems to inhibit the writing or printing of tickets as well as the possession of same for sale. Would the printer who printed tickets, knowing that they were to be used in the conduct of a lottery, offend against this act? The question seems to turn on the knowledge of the party rather than his intent to further participate in the scheme or conduct of the lottery. If the printer knows that his handiwork is to be used in the conduct of lotteries his act in printing tickets is inhibited. And so one who sells tickets at wholesale knowing that they are to be used in the conduct of lotteries offends against the statute. In State v. Collins, 63 N.J.L. 316, 43 A. 896, 897, the court said: "The jury had the right to conclude, from all the facts proved in the case, that he knew just what he had in his possession. His silence, when confronted with the lottery policy slips when taken from him, was a significant circumstance upon the question of knowledge. From the evidence in the case, without reference to the testimony of the defendant, the jury could fairly conclude that both the defendant and Jones were in the lottery policy business, and that the defendant, at least, was a runner in that business, carrying these slips from Jersey City to

New York. * * * The trial judge said to the jury: 'The essence of this offense is the wrongful mind with which it is done, and without which it cannot exist. In a case of this description, the mere fact that certain slips or papers are prohibited by statute, and made criminal, yet, even when found upon the person, does not raise any presumption of guilt against the defendant, or that he had them with guilty knowledge. It must appear beyond reasonable doubt that in the mind of the defendant charged with the offense there existed knowledge of the criminal character of the slip of paper, and that he had the same in his possession with the knowledge that the same pertained in some way to the business of lottery policy.' It is not readily perceived how the defendant could have insisted on any more favorable statement of the law in his behalf to be applied to the facts. Again, the trial judge said to the jury: 'Considering all the testimony in this case, are you or not satisfied that this defendant knowingly was carrying these slips or papers? This statute means just exactly as it reads. The purpose of this act is to eradicate this business.'" See, also, Thomas v. State, 118 Ga. 774; 45 S.E. 622; Winder v. State, 55 Ga.App. 194, 189 S.E. 686; State v. Bove, 98 N.J.L. 350, 116 A. 766; Commonwealth v. Lanzetti, 113 Pa. Super. 370, 173 A. 425.

Courts have held valid statutes for the suppression of lotteries which showed much less consideration to one found in possession of lottery tickets. In Ford v. State, 85 Md. 465, 37 A. 172, 175, 41 L. R.A. 551, 60 Am.St.Rep. 337, the court said: "But it is contended that the statute deprives the accused of the right of trial by jury, and of his constitutional guaranty that he be not deprived of his liberty without due process of law. But the fallacy of the argument is in assuming that it does interfere with those rights. He had the perfect right to prove either that the articles charged in the indictment were not found in his possession, or that those found were not such as the law prohibited him from having. That is the issue made by the statute. It does not deprive him of the presumption of innocence to which he is entitled, but it does make it a crime for him to have in his possession that which is of no lawful use in this state, and which injuriously affects the morals and interferes with the welfare of the people, and it is evident that the statute has made the mere possession of the articles a crime, because that is the most effectual way to break up the lottery business. * * * It is safer to give the language of the legislature its ordinary meaning, and construe it to mean what it says. We do not fear that the innocent will thereby suffer, but, if there be any such danger, it is for the legislative, and not for the judicial, branch of the government to correct any defects that may be found, from experience, to exist in the statute, and we find no such objection to it as would give the court the right to declare it invalid."

The defendant admitted full knowledge of the use to which his customers were putting these tickets and we are constrained to hold that the jury was justified in finding him guilty and the court in imposing the judgment and sentence from which he appealed. Other questions were argued, but we find them without merit.

Finding no error in the record, the judgment and sentence of the district court should be affirmed, and it is so ordered.

SADLER, BICKLEY, BRICE, and ZINN, JJ., concur.