**Certiorari Granted, September 21, 2012, No. 33,779**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-099**

**Filing Date: July 26, 2012**

**Docket No. 30,469**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**MICHAEL T. VENTO,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Mary Barket, Assistant Public Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}**     Defendant was convicted of one count of commercial gambling (profits or operation of a gambling place), a fourth degree felony, in violation of NMSA 1978, Section 30-19-3(A) (1963). On appeal, Defendant argues that (1) the district court improperly instructed the jury, (2) the evidence was insufficient to sustain a conviction for commercial gambling, and (3) the statute is unconstitutionally vague as applied to Defendant's conduct. We determine that the district court erred when it instructed the jury on the charge of commercial

gambling based upon the alternative yet factually inapplicable theory of betting. Since we are unable to discern the theory upon which the jury's finding of guilt was based, we reverse Defendant's conviction and remand for retrial on the charge of commercial gambling.

## BACKGROUND

**{2}** Defendant owned and operated an internet café. Customers could rent internet time using the computer terminals located throughout the café. Customers would purchase time on the internet by buying a card that was then swiped at a card reader near the computer terminal. For every ten minutes of internet time purchased by a customer, the customer would receive one hundred entries into a sweepstakes that awarded cash prizes. However, the purchase of internet time was not required to obtain a sweepstakes card and enter the sweepstakes. Defendant's café would give one card with one hundred free sweepstakes entries to each customer requesting a card, however, these free cards were limited to one card per customer per twenty-four hour period. The rules of the sweepstakes were posted throughout Defendant's café on large posters, and printed on a form that customers signed before obtaining the card to swipe at a computer terminal.

**{3}** Defendant's computer system pre-determined the winning sweepstakes entries, and customers had a choice in determining how the computer would reveal whether an entry was a winner. Customers could either instantly reveal whether they had a winning entry, or they could have the outcome of their entry revealed at a computer terminal through what appeared to be a selection of video casino-like games. Neither method of revealing the sweepstakes results diminished the customer's purchased internet time. In addition, customers were not required to purchase internet time or use a computer terminal in order to reveal whether their free entry was a winner.

**{4}** The New Mexico Gaming Control Board (the Board) conducted a raid at the café, and Defendant was charged with commercial gambling by "participating in the earnings of or operating a gambling place." Defendant asserted that the sweepstakes was a legal promotion intended to entice customers to his recently opened café and did not constitute commercial gambling. Defendant compared his sweepstakes to other sweepstakes programs offered by businesses such as McDonald's, Cola-Cola, and Albertsons stores. The State asserted that Defendant's sweepstakes promotion was illegal because customers rarely used any of their internet time and could not obtain a refund for the internet time that they did not use. Additionally, the majority of customers only participated in the sweepstakes and did not actually use the internet time that they purchased with their sweepstakes winnings.

**{5}** To prove its case, the State presented evidence establishing that only 330 of 140,000 hours of internet time purchased with cash or sweepstakes winnings were actually used by customers to access the internet. This equated to a usage rate of less than one quarter of one percent (00.25%). Sweepstakes winnings of approximately $650,000 were used to purchase internet time of approximately 110,000 hours. After presenting its evidence, the State argued that Defendant's gambling operation was accomplished under a guise of purchasing internet time.

**{6}** Defendant was convicted after a jury trial. Judgment and an order suspending Defendant's sentence was entered on April 22, 2010. Defendant filed a timely appeal to this Court.

## ANALYSIS

### I.     The General Verdict

**{7}** Defendant asserts that reversal is required because the jury returned a general verdict that did not identify the basis of conviction within the commercial gambling statute. He argues that the jury should have been required to specify the basis on which the verdict relied because the commercial gambling statute identifies bets and lotteries as mutually exclusive, and therefore, it would be legally inadequate for a jury to find that Defendant's café constituted a gambling place based on both alternate theories. Thus, because the record does not identify the basis for the jury's finding that Defendant's café was a gambling place, Defendant asserts that his conviction may have relied on a legally inadequate basis and reversal is necessary. In response, the State contends that all of the enumerated bases of conviction are applicable as a matter of law to Defendant's sweepstakes promotion and that jury unanimity was not required as to which alternative type of gambling constituted the principal purpose of Defendant's café.

**{8}** Defendant was charged with commercial gambling on the basis of his participation in the profits of or operation of a gambling place. Section 30-19-3(A). "[G]ambling place" is statutorily defined as:

> a building . . . or a room . . . not within the premises of a person licensed as a lottery retailer or that is not licensed pursuant to the Gaming Control Act, one of whose principal uses is:
>
> (1)     making and settling of bets;
>
> (2)     receiving, holding, recording or forwarding bets or offers to bet;
>
> (3)     conducting lotteries; or
>
> (4)     playing gambling devices[.]

NMSA 1978, § 30-19-1(D) (2002). Thus, the statutory definition of a "gambling place" enumerates four possible bases for a commercial gambling conviction and three different types of illegal gambling: bets, lotteries, and gambling devices. *Id.* The statutory definition of a bet expressly excludes a lottery from classification as a bet. *See* § 30-19-1(B)(3).

**{9}** The jury was instructed on all the alternative bases for a commercial gambling conviction, including the definitions of a bet, a lottery, and a gambling device. *See* § 30-19-1(B), (C), (D) & (E). However, the jury returned a general verdict that only identified guilt on the basis of "commercial gambling as charged," and did not identify the underlying basis

for the gambling conviction among the numerous alternatives set forth in the commercial gambling statute. As a result, we are unable to determine from the record whether the jury found that Defendant's café was a gambling place because it had a principle use related to betting, conducting a lottery, or playing gambling devices. We also cannot determine whether the jury unanimously agreed on one of the alternatives, or whether some jurors convicted Defendant based on a finding that his café was principally used for one type of illegal gambling, while other jurors found that his café was principally used for a different type of illegal gambling.

**{10}**     Because we do not know which theory resulted in Defendant's conviction, we agree with Defendant that we must reverse if any of the enumerated alternatives in Section 30-19-1(D) are legally inadequate to support the jury's verdict. *See State v. Mailman*, 2010-NMSC-036, ¶ 12, 148 N.M. 702, 242 P.3d 269 ("[A] conviction under a general verdict must be reversed where it is based on more than one legal theory and at least one of those theories is legally . . . invalid."). Reversal is necessary under such circumstances because "'[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law.'" *State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct. App. 1994) (quoting *Griffin v. United States*, 502 U.S. 46, 59 (1991)), *aff'd in part, set aside in part by*, 120 N.M. 740, 741, 906 P.2d 731, 732 (1995). Thus, we cannot assume that jurors will know to avoid an alternative basis for reaching a guilty verdict that would result in a due process violation. *See id.*

**{11}**     We must begin our analysis by determining whether Defendant's conviction for commercial gambling was based upon inadequate legal grounds or merely inadequate evidence. We will do so by addressing the applicability of the commercial gambling statute's classifications of illegal gambling to Defendant's sweepstakes promotion. We shall also address the interpretation and construction of our existing gambling statutes as applied to a sweepstakes promotion used to attract customers to a business establishment. This issue is one of first impression for this Court.

**{12}**     "Issues of statutory construction and interpretation are questions of law and are reviewed de novo." *State v. Guerra*, 2001-NMCA-031, ¶ 6, 130 N.M. 302, 24 P.3d 334. When analyzing the construction of a statute, our primary purpose is to give effect to the intent of the Legislature. *Bd. of Educ. v. N.M. State Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 16, 128 N.M. 398, 993 P.2d 112. "The plain language of the statute is our primary guide to legislative intent, and we will give persuasive weight to any administrative construction of statutes by the agency charged with administering them." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 17, 143 N.M. 84, 173 P.3d 6. We "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). "Only if an ambiguity exists will we proceed further in our statutory construction analysis." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. In addition, "[t]he statute must be read as a whole, construing each section so as to produce a harmonious whole." *State v. Wilson*, 2010-NMCA-018, ¶ 9, 147 N.M. 706, 228 P.3d 490. We apply these principles to our analysis of whether any of the alternative theories

enumerated in Section 30-19-1(B), (C), (D), and (E) was legally inadequate to support Defendant's conviction for commercial gambling.

**{13}** The plain language of the commercial gambling statute specifically excludes a lottery from the statutory definition of a bet. Section 30-19-1(B)(3) ("[A] bet does not include . . . a lottery as defined in this section."). *Turpin v. Merrell Dow Pharms., Inc*., 959 F.2d 1349, 1360. Thus, Defendant may be properly charged with commercial gambling based on using his café either for betting related activities or for conducting a lottery, but his sweepstakes promotion must be classified as either a bet or a lottery. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 572 n.1, 904 P.2d 11, 21 n.1 (1995) (explaining that a particular form of gaming or gambling would necessarily fall under the definition of a lottery or under the definition of a bet, but not both). Once a sweepstakes promotion meets the statutory definition of a lottery, it cannot also be classified as a bet, and vice versa. Thus, we agree with Defendant that the alternate theories of betting and lottery are legally inconsistent.

**{14}** Based upon the mutual exclusivity of betting and lottery activities, legal error occurred when the jury was asked to convict Defendant of commercial gambling without identifying whether Defendant's promotion constituted a lottery or a bet. *Griffin*, 502 U.S. at 49-51 (finding no due process requirement to set aside general guilty verdict where evidence was inadequate to support a conviction as to one of the alternative theories of the crime presented). However, we may remand for new trial if sufficient evidence was presented to support a conviction based on any legally adequate alternative theory. *Id.*; *see also State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (double jeopardy does not bar retrial if sufficient evidence was presented to support a conviction at trial); *See, e.g.*, *State v. Saiz*, 2008-NMSC-048, ¶ 63, 144 N.M. 663, 191 P.3d 521 (noting that two alternative theories used to support a conviction were not factually contradictory or otherwise mutually exclusive and reasoning that it was therefore not error to instruct the jury on both theories), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. As a result, we must address whether sufficient evidence supported Defendant's conviction on the legally adequate alternative theories. We must first determine whether Defendant's sweepstakes promotion is more appropriately classified as a lottery or as a bet.

**{15}** Defendant's sweepstakes promotion was initially identified by the parties as a lottery. A lottery is defined as:

> an enterprise wherein, for a consideration, the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill.

Section 30-19-1(E). A bet, on the other hand, involves a more specific agreement to win or lose an item of a specifically identified value. *See* § 30-19-1(B) (defining a bet as "a bargain in which the parties agree that . . . one stands to win or lose anything of value specified in the agreement"). Thus, a lottery differs from a bet in that it provides participants with a general opportunity to win a prize.

**{16}** In the present case, Defendant's sweepstakes promotion was used as a business tool to attract customers and, therefore, provided the opportunity for a wide number of potential customer participants to win a variety of pre-determined, non-specific, cash prizes. *See G.A. Carney, Ltd. v. Brzeczek*, 453 N.E.2d 756, 760 (Ill. App. Ct. 1983) ("The controlling fact in the determination of whether a given scheme or business is a lottery is determined by the nature of the appeal which the business makes to secure the patronage of its customers. If, as here, the controlling inducement is the lure of an uncertain prize, then the business is a lottery."). No agreement as to the value of the possible prizes existed between Defendant and the patrons who participated in his promotion. Thus, based on the plain language of the commercial gambling statute, we conclude that Defendant's sweepstakes promotion was structured in the form of a lottery. *See* 54 C.J.S. *Lotteries*, § 1, 2 (2010) ("It is essential to a lottery that the winners be determined by chance alone. . . . The essential test to determine the existence of a lottery, based on all the facts and circumstances of the particular case, is not whether it is possible to win without paying but whether those who choose to pay are paying in part for the chance of a prize."); *see also Johnson*, 120 N.M. at 571, 904 P.2d at 20 (noting that "the statutory definition of a 'lottery' . . . is extremely broad"); *State v. Jones*, 44 N.M. 623, 626-27, 107 P.2d 324, 326-27 (1940) (recognizing that an attempt to separate cause from effect, being the consideration paid through a patron's registration from the offer of prizes by chance, is an obvious subterfuge to avoid being recognized as a lottery).

**{17}** Our conclusion is consistent with our court's numerous decisions that have addressed a variety of promotional schemes and classified them as lotteries. *See Armijo v. Town of Atrisco*, 62 N.M. 440, 442, 312 P.2d. 91, 92 (1957) (involving a land grant attempting to distribute common lands of the grant by lottery); *Jones*, 44 N.M. at 624, 107 P.2d at 325 (involving a movie theater bank night promotion); *State v. Butler*, 42 N.M. 271, 273-74, 76 P.2d. 1149, 1151-52 (1938) (involving a lucky ticket prize based upon baseball team scores).

**{18}** As we have noted, once Defendant's sweepstakes promotion is properly classified as a lottery for the purposes of any commercial gambling statute, it cannot also meet the statutory definition of a bet. Section 30-19-1(B)(3). A conviction that is potentially premised upon illegal betting, as enumerated in Section 30-19-1(D)(1) and (2), is improper as a matter of law if a defendant's promotion is classified as a lottery. *Id.* As a result, legal error occurred when the jury was asked to convict Defendant of gambling based upon the theory of betting. *See Griffin*, 502 U.S. at 54-58.

## II. Sufficiency of the Evidence

**{19}** We next address whether sufficient evidence supported Defendant's conviction on the legally adequate alternative theories of conducting a lottery and playing gambling devices. Defendant asserts that his promotion, which encourages customers to visit his store and purchase internet time, is a legal form of prize gaming called a sweepstakes. Defendant further asserts that the evidence was inadequate to support a verdict on any of the enumerated bases because sweepstakes are distinct from any form of gambling in that they do not require consideration. In response, the State asserts that the evidence presented at trial was sufficient to prove that Defendant was either conducting an illegal lottery; providing gambling devices to his customers; or participating in betting activities. Because

we have already determined that it would be legally inadequate to convict Defendant based on his participation in betting activities, we need not address the evidence related to betting. We will first determine whether the evidence was sufficient to conclude that Defendant's sweepstakes promotion qualified as a lottery. We will then address whether Defendant's sweepstakes was conducted in a manner that would also qualify as a gambling device.

### 1.    Standard of Review

{20}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). "In applying this standard, an appellate court reviews the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted). "In reviewing the evidence, the relevant question is whether any rational jury could have found each element of the crime to be established beyond a reasonable doubt." *Id.* (emphasis, internal quotation marks, and citation omitted). The reviewing court does not substitute its judgment for that of the jury: "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Nor will this Court "evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted).

### 2.    Lottery

{21}    In *Jones*, 44 N.M. at 629, 107 P.2d at 328, our Supreme Court observed that a lottery consists of three elements, "prize, chance[,] and consideration." Neither party disputes that Defendant's sweepstakes provided an opportunity for participants to win a cash prize and the award of these prizes was determined by chance. The only disputed issue is whether the State established that the statutory requirement for "consideration" existed in Defendant's sweepstakes promotion. Defendant maintains that while his sweepstakes is structured to resemble a lottery, it cannot be defined as such because it lacks the required element of consideration. As such, Defendant argues that the evidence was insufficient to support the necessary element of consideration to establish that a lottery was being conducted under Section 30-19-1(E).

{22}    We first note that Defendant supports this argument by equating his lottery promotion as the same type of sweepstake games and promotions offered by McDonald's, Cola-Cola, or Albertsons. In essence, Defendant argues that any consideration paid to participate in his sweepstakes promotion was identical to the promotions offered by these national companies who have not been subjected to criminal prosecution. Although this argument could be interpreted as a selective prosecution violation under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Defendant has not presented any authority or developed an Equal Protection argument, but limits his argument

to the sufficiency of the evidence. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (stating that this Court will not review an undeveloped and unclear argument on appeal); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Despite Defendant's invitation to do so, we will not substitute our sufficiency of the evidence analysis with an evaluation of the numerous other sweepstakes-type promotions conducted in New Mexico by other national companies who are not defendants in this proceeding. *See Collado v. City of Albuquerque*, 2002-NMCA-048, ¶ 18, 132 N.M. 133, 45 P.3d 73 (recognizing that the district court is limited to deciding the case before it and inferences regarding similarities to other non-parties are unwarranted).

**{23}** Applying our deferential standard of review, we conclude that sufficient evidence was presented to convict Defendant of commercial gambling by conducting a lottery. At trial, both parties presented evidence regarding the concept of a sweepstakes promotion and the case focused on the element of consideration. The State presented evidence that customers to Defendant's café paid consideration to participate in his sweepstakes lottery promotion. Customers could not obtain a refund for any of the internet time that they did not use, which constituted ninety-nine point seventy-five percent (99.75%) of the internet time purchased. Only one quarter of one percent (00.25%) of the internet time purchased by customers was actually used or consumed. The majority of customers who still had unused internet time utilized their sweepstakes winnings to purchase additional internet time that they did not use. Defendant also told the Board investigators that he retained only eight percent (8%) of all the revenue received from the purported sale of internet time, with the balance paid to patrons as prizes in the sweepstakes promotion. The lopsided percentages related to internet usage, prizes awarded to patrons, and the significant repurchase of internet time despite patrons already possessing unused internet time constitute substantive evidence that Defendant's café operation was structured as a guise for commercial gambling. Based upon these facts and the casino-style display of Defendant's ongoing sweepstakes promotion, the jury could reasonably determine that the controlling inducement for the monies being paid by customers for internet time was in fact consideration to participate in a lottery that was disguised as a legitimate business promotion. *See G.A. Carney*, 453 N.E.2d at 760.

**{24}** Despite the Board's failure to provide regulations or other rules to guide this type of sweepstakes promotion, we recognize that a flexible-participation lottery promotion can be abused if the financial structure is designed to effectuate the gambling component of the scheme rather than the sale of business products actually offered to customers. In this case, it is the jury's function as fact finder to determine whether the consideration paid for a product is in fact an abusive guise to participate in a lottery scheme. As a result, Defendant's conviction for commercial gambling should be remanded to the district court for retrial on the basis of conducting a lottery pursuant to Section 30-19-3(A), as defined under Sections 30-19-1(D)(4) and 30-19-1(E).

## 3. Gambling Devices

**{25}** We next examine the applicability of classifying Defendant's computer terminals as gambling devices. A gambling device is defined as: "a contrivance . . . that, for a

consideration, affords the player an opportunity to obtain anything of value, the award of which is determined by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the device." Section 30-19-1(C). The State asserts that the computer terminals, which reveal winning sweepstakes credits, were similar to "playing the slot style games," and meet the definition of a gambling device. In response, Defendant argues that the computers can not be classified as gambling devices because they merely revealed whether a participant had a winning or losing entry, and did not affect the player's opportunity to obtain anything of value. Our review of the record indicates that Defendant's computer terminals cannot meet the statutory definition of a gambling device pursuant to Section 30-19-1(C).

{26}    Defendant's computer terminals were used as the means to access the internet at Defendant's café. The sweepstakes entries were actually delivered to customers in the form of a "swipe card" that was then swiped into a reader for visual display at either the café's counter or at the individual computer terminals. For the purposes of a commercial gambling charge, the computer terminals were nothing more than a visual device used to display the results of Defendant's sweepstakes promotion that were loaded onto the swipe card. Actual money could not be inserted into the computer terminals to participate in the sweepstakes, and additional entries could only be obtained from the cafe's counter and then downloaded upon the computer access swipe card. Although computer terminals and equipment can be utilized to function as gambling devices, the State has not presented sufficient evidence to establish that the terminals in this case met the statutory definition. *See* § 30-19-1(C) (defining a gambling device as "a contrivance . . . that, for a consideration, affords the player an opportunity to obtain anything of value."). Based upon the specific facts presented in this case, the computer terminals at Defendant's café did not afford customers the opportunity to insert monies, obtain anything of value, or to in any way alter the pre-determined outcome of the data already imbedded onto the swipe card. As a result, the evidence was insufficient to support a conviction for commercial gambling based upon the definition of "gambling device" set forth in Section 31-19-1(D)(4).

### III.    Constitutional Vagueness of the Lottery Statute

{27}    Defendant additionally claims that his conviction should be overturned because the "commercial gambling statute" is unconstitutionally vague as applied in this case. Most notable in Defendant's brief and argument to this Court is the failure to identify any particular statute or section that is specifically considered unconstitutional. Defendant does not provide one statutory reference or illustrative provision in his briefs to this Court. Despite providing broad authority regarding the legal basis for analyzing a constitutional vagueness claim, it is impossible to determine whether Defendant is actually challenging Section 30-19-3, or alternatively the related definitions under Section 30-19-1(D) and (E), or perhaps other sections within Chapter 30, Article 19.

{28}    In its response, the State appears to assume that Defendant is attacking certain portions of all the gambling statutes potentially dealing with a lottery-type of scheme. Effectively, neither party has adequately directed this Court to the particular statutory provision or provisions that are being challenged as unconstitutionally vague. We are left

with nothing but speculation and assumption regarding Defendant's constitutional vagueness challenge. We refuse to address Defendant's argument on this basis. The issue has not been properly preserved and presented to this Court for review. *State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 ("[T]his Court's policy is to refrain from reviewing 'unclear or undeveloped arguments which require us to guess at what [a party's] arguments might be[.]'" (citation omitted)); *see Headley*, 2005-NMCA-045, ¶ 15 (concluding that this Court has no duty to review an argument that is not adequately developed with facts, citation to the record, and authority); *Lovato v. Crawford & Co.*, 2003-NMCA-088, ¶ 30, 134 N.M. 108, 73 P.3d 246 ("[A party cannot] throw out legal theories without connecting them to any elements and any factual support for the elements."). Therefore, we need not address Defendant's constitutional vagueness argument any further and hold that it is not adequately presented for review.

## CONCLUSION

**{29}** For the reasons set forth herein, we conclude that the district court erred when it used a general verdict form and instructed the jury on the charge of commercial gambling based upon the mutually exclusive gambling theories of a lottery or a bet. Because the use of a general verdict form constituted legal error under these circumstances and the only adequate classification for Defendant's sweepstakes promotion was a lottery, we reverse Defendant's conviction. We remand for a new trial on the charge of commercial gambling based solely upon the theory of conducting a lottery. We need not address Defendant's remaining claims of error.

**{30}   IT IS SO ORDERED**.

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Vento*, No. 30,469**

**APPEAL AND ERROR**
Remand
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**

Vague or Overbroad

**CRIMINAL LAW**
Gambling

**CRIMINAL PROCEDURE**
Jury Instructions
Verdict
Verdict Forms

**JURY INSTRUCTIONS**
Criminal Jury Instructions
Improper Jury Instructions

**STATUTES**
Interpretation
Vagueness